# IN THE SUPREME COURT OF TEXAS

════════════
No. 12-0274
════════════

CITY OF LAREDO, TEXAS, PETITIONER,

v.

LUIS MONTANO, CECILIA MONTANO MOTA, CRUZ JORGE MONTANO, CLARENCE
HILLBURN AND CLARENCE HILLBURN AS EXECUTOR OF THE ESTATE OF GLORIA
MONTANO HILLBURN, DECEASED, RESPONDENTS

═══════════════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTH DISTRICT OF TEXAS
═══════════════════════════════════════════════════════

**PER CURIAM**

In this eminent-domain case, a jury determined that the City of Laredo's condemnation was
not for an authorized public use and awarded attorney's fees and expenses to the property owner
under Texas Property Code § 21.019(c). This fee-shifting statute authorizes the trial court to "make
an allowance to the property owner for reasonable and necessary fees" and expenses to the judgment
date, when condemnation is denied. The City appealed the award, complaining about deficiencies
in the property owner's attorney's fees proof under the fee-shifting statute. The court of appeals
reformed the award in part and, as reformed, affirmed. ___ S.W.3d ___, ___ (Tex. App.—San
Antonio 2012). Because we conclude that deficiencies remain in the property owner's proof of

attorney's fees, we reverse the court of appeals' judgment, in part, and remand to the trial court for further proceedings.

The Montano family owns property in the central business district of Laredo near the International Bridge No. 1 to Mexico. In December 2004, the City decided it needed the Montanos' property to widen a street and build a pedestrian plaza near the bridge. The Montanos refused to sell. The family claimed that the City had no public purpose for their land but rather merely intended to benefit El Portal Center, a private entity operating a nearby shopping center.

The City filed suit to condemn the property in March 2006. The case was tried to a jury about four years later. The jury agreed with the Montanos that the City had no authorized public use for the property and awarded attorney's fees and expenses. The trial court rendered judgment on the jury verdict, awarding the Montanos $446,000 in attorney's fees through trial, additional attorney's fees on appeal, and additional sums for appraisals and other expenses the property owner incurred. The City appealed the attorney's fees award.

The court of appeals reversed the award of appellate attorney's fees, holding that the statute did not authorize their recovery. ___ S.W.3d at ___ (citing *FKM P'ship Ltd. v. Board of Regents of the Univ. of Houston Sys.*, 255 S.W.3d 619, 637 (Tex. 2008)). And, after the Montanos agreed to reduce their attorney's fees recovery to $422,302.91 through remittur, the court of appeals affirmed the remainder of the judgment. *Id.* at ___. The City appeals, asking this Court to remand the attorney's fees award to the trial court for reconsideration because of inadequacies in the Montanos' proof.

2

During this litigation, the Montanos were represented by three attorneys, Lopez Peterson, L.L.C., Richard J. Gonzalez, and Adriana Benavides-Maddox. The trial court awarded the Montanos their attorney's fees as a lump sum, but the court of appeals broke the award down by representation, concluding the evidence to be legally and factually sufficient to support an award of "$46,302.91 for Lopez Peterson's hours, $339,000 for Gonzalez's hours, and $37,000 for Benavides-Maddox's hours," yielding a reasonable and necessary fee of $422,302.91 through the trial of the case. *Id*. at ___. Lopez Peterson represented the Montanos only through the Special Commissioner's award, and the City does not question its fees in this Court. The City, however, does question the fees attributed to the other two attorneys, Gonzalez and Benavides-Maddox, and their testimony in support of the award.

Gonzalez testified that Luis Montano hired him as the lead attorney in the case in December 2004 or January 2005. Gonzalez did not testify as to the details of his fee agreement, but his testimony about the hours devoted to the case suggests the agreement was for Gonzalez to be paid an hourly rate, rather than a negotiated or contingent fee. The attorney testified to performing the following tasks in the Montanos' defense: (1) made an open records request; (2) searched through city council meeting minutes regarding the Montano family's property; (3) watched thirty-eight DVDs of the city council meetings (some more than once); (4) visited the premises many times; (5) conducted "a lot" of legal research; (6) prepared the pleadings and motions; (7) spent time in court for appearances; (8) spent "countless hours" preparing for and taking depositions; (9) reviewed the transcripts and DVDs of the depositions; and (10) prepared for trial and tried the case. Gonzalez

3

further testified to working on the case for 226 weeks,[1] estimating that he devoted on average "a barebones minimum" of six hours a week to the case.

Gonzalez, however, admitted that he did not keep time records in the case. Moreover, he apparently did not have a firm idea about what the Montanos owed him for his work before his testimony at trial. While on the witness stand, Gonzalez was given a calculator with which he eventually estimated that he had 1,356 hours in the case (226 weeks x 6 hours/week). He then multiplied those hours by his hourly rate of $250 to conclude that the Montanos owed him a fee of $339,000 through trial. He noted that the family had previously paid him $35,000, leaving a balance of $304,000.

In addition to the time and labor involved in representing the Montanos, Gonzalez touched upon some other factors that we have acknowledged as relevant to the determination of a reasonable attorney's fee. *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997) (quoting Texas Disciplinary Rule of Professional Conduct 1.04, State Bar Rules, Art. 10 § 9, Rule 1.04).[2] Gonzalez testified that recent changes in the law made the case novel and complicated. He

---

[1] Gonzalez did not represent the Montanos before the Special Commissioners but returned to the case after the Special Commissioners awarded the property to the City.

[2] The decision and rule list the following eight factors as relevant when determining the reasonableness of a fee:
(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;
(2) the likelihood ... that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the results obtained;
(5) the time limitations imposed by the client or by the circumstances;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

4

also claimed to have turned away other business because of the time demands of the case, although he could not remember any specific examples. Finally, he noted his success in defeating the City's attempt to condemn the Montanos' property for far less than its appraised $4,000,000 value, and the defense's modest cost, which was only about ten percent of the property's value. There was also testimony that Gonzalez was one of only a few local attorneys who would take this type of case and that his hourly rate of $250 an hour was reasonable and customary for a lawyer of his experience, reputation, and ability.

On cross-examination, Gonzalez conceded that this was his first condemnation case, although he claimed extensive experience in other types of litigation against the government. When asked about any bills, invoices or other documentary evidence of his time in the case, Gonzalez admitted he had none but pointed to the "thousands and thousands and thousands of pages that were accumulated in this case" as evidence of his time investment. Gonzalez further conceded that he would have put more effort into documenting his hours in the case were he preparing a bill for his client.

When asked about tracking his time for billing purposes, Gonzalez began to explain his process before a sustained objection cut him off in mid-sentence:

> Normally the way that I would do this is that I would go back in time and look at the documents in the case and then that would help me to make a list of how much time I spent; for example, preparing the list of witnesses that was requested by your office. I remember that list of witnesses and the list of —

Later, Gonzalez explained that his estimate of six hours a week on average during the course of the litigation was conservative, suggesting that he was giving the City a discount for his billable time in the case:

> I know that if I had had the time to put together the list of the work that I performed, that it would be well over the amount that I'm requesting. I know that it would be more than that number of hours and I would be able to tell you for each and every thing that I did in this case.

Luis Montano also hired Benavides-Maddox to assist Gonzalez in the case and agreed to pay $200 an hour for her work. Benavides-Maddox testified that her hourly rate was reasonable and customary for a lawyer of her competence and experience. She did not list all her tasks, but she testified about her areas of responsibility. Among other things, she was responsible for creating the jury charge, managing the experts, and understanding their appraisal and evaluation methods for her direct examination during the trial. Benavides-Maddox testified that she kept detailed billing records of her tasks and the time spent, and had billed and been paid $25,000 for her work before the trial began. Luis Montano confirmed that Benavides-Maddox had been paid $25,000 for her work. Benavides-Maddox also testified that she put in twelve hour days during the five-day trial and was therefore owed an additional $12,000 for her trial work. On cross-examination, she was asked whether she had brought any records to document her time in the case. Benavides-Maddox replied that she had not, explaining that the City had not asked her to produce these records.

Using the *Andersen* factors, the court of appeals found the evidence legally and factually sufficient to support an attorney's fee award to the Montanos in the amount of $422,302.91, which included "$339,000 for Gonzalez's hours and $37,000 for Benavides-Maddox's hours." ___ S.W.3d

at ___. The City complains that the evidence of attorney's fees is insufficient because Gonzalez and Benavides-Maddox failed to produce time records, billing statements, or even a client agreement to substantiate their fee requests. The City argues that such documentation is necessary in light of our recent decision in *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757 (Tex. 2012).

In *El Apple*, the claimant sought recovery of attorney's fees in connection with a claim under the Texas Human Rights Commission Act. We held that an award under that statute had to be based on the "lodestar" method, which required consideration of the time spent, the reasonable value of that time, and whether the time was reasonable and necessary. *Id*. at 760. We further observed that testimony in generalities about tasks performed in a case that did not provide enough information for a meaningful review of whether the tasks and hours were reasonable and necessary was an insufficient basis for a lodestar calculation. *Id*. at 763. Finally, we observed that hours not properly billed to one's client are also not properly billed to one's adversary under a fee-shifting statute. *Id.* at 762 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

Contrary to the City's argument, *El Apple* does not hold that a lodestar fee can only be established through time records or billing statements. We said instead that an attorney could testify to the details of his work, but that "in all but the simplest cases, the attorney would probably have to refer to some type of record or documentation to provide this information." *Id.* at 763. For this reason, we encouraged attorneys using the lodestar method to shift their fee to their opponent to keep contemporaneous records of their time as they would for their own client. *Id.* The fee-shifting statute in this case, however, does not require that attorney's fees be determined under a lodestar method, as in *El Apple*. The property owner nevertheless chose to prove up attorney's fees using this

7

method and so our observations in *El Apple* have similar application here. And, as was the "proof" in *El Apple*, Gonzalez's testimony here is simply devoid of substance.

Gonzalez testified that he had reasonably accumulated about 1,356 hours in the case. He came to this number by multiplying his 226 weeks of active employment by a factor of six, representing his estimate of the average number of hours per week he worked the case. But some weeks, like the week of trial or the weeks he prepared for depositions, he obviously spent far more than this average weekly estimate. Other weeks, he must have devoted little or no time to the case to balance out these busier weeks and net his estimate of six hours. The record, however, provides no clue as to how Gonzalez came to conclude that six hours a week was a "conservative" estimate of his time in the case. Our puzzlement deepens when we consider Gonzalez's testimony that he did not make any record of his time in the case or prepare any bills or invoices for the Montanos. In fact, Gonzalez does not appear to have known how much he was owed for his services until the calculations at trial. In short, Gonzalez offered nothing to document his time in the case other than the "thousands and thousands and thousands of pages" generated during his representation of the Montanos and his belief that he had reasonably spent 1,356 hours preparing and trying the case. We rejected similar proof in *El Apple*. *Id*. at 763.

Gonzalez's testimony that he spent "a lot of time getting ready for the lawsuit," conducted "a lot of legal research," visited the premises "many, many, many, many times," and spent "countless" hours on motions and depositions is not evidence of a reasonable attorney's fee under lodestar. *See id.* (noting that time estimates based on generalities provide none of the specificity needed for a court to make a meaningful lodestar determination). In *El Apple*, we said that a lodestar

8

calculation requires certain basic proof, including itemizing specific tasks, the time required for those tasks, and the rate charged by the person performing the work. *Id.* at 765. Here, Gonzalez conceded that had he been billing his client he would have itemized his work and provided this information. A similar effort should be made when an adversary is asked to pay instead of the client. *See id.* at 762 ("A meaningful review of the hours claimed is particularly important because the usual incentive to charge only reasonable attorney's fees is absent when fees are paid by the opposing party.").

Benavides-Maddox's testimony, on the other hand, is not similarly deficient. She testified that she used a billing system to keep track of her time in the case and that she had billed, and been paid, $25,000 for her work up to trial. She further testified that her contract with the Montanos provided for payment at her $200 hourly rate. Finally, she testified that she arrived early each day of trial and continued to work after the jury was dismissed preparing for the next day. She estimated that she worked about twelve hours per day during the course of the five-day trial. While similar to Gonzalez's estimation that he worked the case an average of six hours a week during his four-year involvement, it is also different in significant respects.

The billing inquiry here involves contemporaneous events and discrete tasks—the trial and associated preparation for each succeeding day. Moreover, it is a task the opponent witnessed at least in part, having also participated in the trial. Despite this knowledge, Benavides-Maddox's charges relating to the trial were not questioned on cross-examination. Unlike Gonzalez's testimony, Benavides-Maddox's testimony about her unbilled trial work is some evidence on which to base an award of attorney's fees because it concerns contemporaneous or immediately completed work for

which she had not had time to bill, or presumably even record, in her billing system. The court of appeals accordingly did not err in affirming the award attributable to her fees.

The court of appeals, however, did err in affirming the part of the award attributable to Gonzalez's claimed fee of $339,000. Accordingly, pursuant to Texas Rule of Appellate Procedure 59.1, the Court grants the petition for review and, without hearing oral argument, reverses the court of appeals' judgment as to the amount of the award due to Gonzalez's services and remands to the trial court for further proceedings.

Opinion Delivered: October 25, 2013