

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-14-00122-CV

---

RICHARD A. MYERS                                                      APPELLANT

V.

SOUTHWEST BANK                                                        APPELLEE

----------

FROM THE 236TH DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 236-265286-13

----------

## MEMORANDUM OPINION[1]

----------

Appellant Richard Myers appeals from a summary judgment for Appellee Southwest Bank on its deficiency claim against him. In four points, Myers challenges the sufficiency of the evidence supporting the judgment as to Southwest's deficiency claim and the award of attorney's fees, as well as the trial court's finding that he had waived his right to a fair market value determination

---

[1]*See* Tex. R. App. P. 47.4.

and offset as provided in property code section 51.003.[2]  Because we hold that the evidence supports the summary judgment and that the trial court did not err by granting summary judgment despite Myers's pleading the application of section 51.003, we affirm.

## Background

Myers is the chief executive officer of Realty Capital Wichita Falls, L.P. (Realty LP), which is the general partner of Realty Capital Partners, LLC (Realty LLC).  In 2008, Realty LP borrowed $1,800,000 from Southwest under a note signed by Myers in his capacity as Realty LP's CEO.  The note was secured by a deed of trust on property in Wichita County, Texas.  Myers also signed a guaranty in connection with the loan.

In April 2013, Southwest sold the Wichita County property at a nonjudicial foreclosure sale and applied the proceeds of the sale to the unpaid balance on the note.  Southwest then filed suit against Myers for breach of the guaranty, seeking to recover the deficiency on the note.  Southwest also sued Realty LP and Realty LLC but subsequently nonsuited both entities.

Southwest filed a traditional motion for summary judgment on its claim against Myers.  It also sought summary judgment on its claim for attorney's fees.

Myers amended his answer and filed a response to the summary judgment motion.  In his amended answer, he requested the court to determine fair market

---

[2]Tex. Prop. Code Ann. § 51.003 (West 2014).

2

value of the property on the date of foreclosure as provided in section 51.003 and to offset the deficiency amount by the amount that the fair market value exceeded the foreclosure sale price. In Myers's summary judgment response, he stated that he had a statutory right to an offset under section 51.003, and that because he had requested a fair market value determination and offset under that section, "a fact issue exists" as to the amount of any deficiency.

The day before the summary judgment hearing, Southwest filed a reply to Myers's summary judgment response. In that reply, Southwest argued that the guaranty contained language providing that Myers had waived his right to a section 51.003 offset.

The trial court granted judgment for Southwest, ordering that Southwest recover from Myers $420,633.24 plus interest, $5,000 in attorney's fees, and an additional amount of conditional appellate attorney's fees. Myers now appeals.

## Standard of Review

We review a summary judgment de novo.[3] We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could and disregarding evidence contrary to the nonmovant unless reasonable jurors could not.[4] We indulge

---

[3] *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010).

[4] *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).

every reasonable inference and resolve any doubts in the nonmovant's favor.[5]  A plaintiff is entitled to summary judgment on a cause of action if it conclusively proves all essential elements of the claim.[6]

**Analysis**

Myers argues in his first point that the trial court erred by granting Southwest's summary judgment motion over his objections because the motion was not supported by sufficient evidence.  We therefore look at the evidence relied on by Southwest in the light most favorable to Myers to see if Southwest established all essential elements of its deficiency claim.[7]  Myers argues that the evidence supporting Southwest's breach of guaranty claim was conclusory, based on hearsay, and not based on personal knowledge.

To support its breach of guaranty claim, Southwest attached to its motion the affidavit of Jerry Hendrix, senior vice president at Southwest.  Hendrix attached to his affidavit copies of the promissory note, deed of trust, guaranty, and the deed from the foreclosure sale.

In Hendrix's affidavit, he stated that he is one of the custodians of records at Southwest and that all the exhibits attached to his affidavit were kept in the

---

[5]*20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008).

[6]*See* Tex. R. Civ. P. 166a(a), (c); *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986).

[7]*See* Tex. R. Civ. P. 166a(a), (c); *Fielding*, 289 S.W.3d at 848; *MMP, Ltd.*, 710 S.W.2d at 60.

4

regular course of Southwest's business. He stated that he had personal knowledge of the facts set out in his affidavit by virtue of his position with Southwest, his review of the relevant files, and his personal dealings with the matter.

Hendrix asserted that at the time of the foreclosure sale, the balance owed on the note was $1,604,813.09, plus $32,924.39 in interest; that Southwest purchased the property at the foreclosure sale for a credit bid of $1,100,000, resulting in a deficiency of $504,813.09; and that the current amount of accrued interest was $47,677.85. Hendrix further stated that under the guaranty, Myers agreed to be jointly and severally liable for up to $400,000 of the principal plus interest and attorney's fees incurred in enforcing the guaranty. He stated that on February 27, 2013, Southwest had made a demand on Myers for payment under the guaranty.

The copy of guaranty attached to the affidavit stated that Myers guaranteed the prompt and full payment of the note, provided, however, that his obligation under the guaranty "shall be $400,000 in principal" plus interest that accrued from the date that Southwest made demand on him for payment. And Myers agreed in the guaranty to pay on demand "all reasonable attorneys' fees incurred by [Southwest] in connection with the enforcement and/or collection" of the guaranty.

Myers argues that Hendrix's statements about the outstanding balance are not supported by the documents attached to his affidavit, that the record does not

5

contain documentation showing the outstanding balance on the note at the time of foreclosure, and that Hendrix's testimony was therefore conclusory. He asserts that Realty LP "presumably" paid Southwest $668,308.80 under the note, and the record does not include any default letters sent to Realty LP.

This court has held that "[a] lender need not file detailed proof [of] the calculations reflecting the balance due on a note; an affidavit by a bank employee which sets forth the total balance due on a note is sufficient to sustain an award of summary judgment."[8] Thus, the fact that Southwest did not provide documentation of how it calculated the outstanding balance did not in and of itself make its evidence conclusory or insufficient as to the amount of the outstanding balance.

Myers concedes that a bank officer may testify about an outstanding loan balance, but he counters that the affidavit "must affirmatively show how the affiant became personally familiar with the facts," and Hendrix does not say what he reviewed in the file, if anything, to make his determination. But Hendrix stated that he had reviewed the bank's file and had personally dealt with the matter. He

---

[8]*Energico Prod., Inc. v. Frost Nat'l Bank*, No. 02-11-00148-CV, 2012 WL 254093, at *5 (Tex. App.—Fort Worth Jan. 26, 2012, pet. denied) (mem. op.); *see also Martin v. First Republic Bank, Fort Worth, N.S.*, 799 S.W.2d 482, 485 (Tex. App.—Fort Worth 1990, writ denied).

6

therefore provided the basis for his opinion. He was not required to detail which specific documents he had reviewed.[9]

Myers also argues that Hendrix needed to provide supporting documents to support his statement that the property sold at foreclosure for $1,100,000. He contends that based on the language of the foreclosure deed, Southwest "could have bid" $1,650,000, thereby satisfying the note in full. And he argues that to the extent Hendrix's testimony is based on the foreclosure deed, it is hearsay. But Southwest did not need to consult the foreclosure deed to tell it how much it had bid at the sale. Hendrix, like any other corporate employee, is presumed to know the facts that he would learn in the usual course of his job.[10] The amount that Southwest bid at foreclosure is information that Hendrix would learn by virtue of his position as a senior vice president and by reviewing Southwest's files.

In a reply brief, Myers cites an opinion from this court for the well-established rule that "[i]f uncontroverted summary judgment evidence is from an interested witness, it does nothing more than raise a fact issue unless it is clear, positive and direct, otherwise credible and free from contradictions and

---

[9]*See Energico Prod.*, 2012 WL 254093, at \*6 (stating that "[a] corporate employee is generally presumed to possess personal knowledge of facts that he or she would learn in the usual course of employment without having to otherwise prove personal knowledge").

[10]*See id.*

7

inconsistencies, and could have been readily controverted."[11] Myers emphasizes the "interested witness" language in that rule.

We agree that our prior opinion correctly stated the law regarding the testimony of an interested witness. But Myers does not point out how Hendrix's testimony falls outside of the "unless" part of the rule. As set out in the summary judgment rule, the affidavit of an interested witness *can* support summary judgment when it is "clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted."[12]

The only argument Myers makes about why, as an interested witness, Hendrix's affidavit cannot support summary judgment is that the foreclosure deed does not corroborate Hendrix's testimony because that deed states that the property was sold to Southwest for "an amount in excess of . . . $1,000.00 . . . and other good and valuable consideration paid as a credit upon the obligation secured by the Deed of Trust, in compliance with the terms thereof." Myers cites a case from this court in which we held that a fact issue existed because an affidavit supporting a summary judgment motion was directly contradicted by evidence attached to that affidavit.[13]

---

[11] *See Travelers Ins. Co. v. Bosler*, 906 S.W.2d 635, 645 n.7 (Tex. App.—Fort Worth 1995), *pet. granted, judgm't vacated w.r.m.*, 938 S.W.2d 716 (Tex. 1997).

[12] Tex. R. Civ. P. 166a(c).

[13] *FFP Mktg. Co., Inc. v. Long Lane Master Trust IV*, 169 S.W.3d 402, 410 (Tex. App.—Fort Worth 2005, no pet.).

But although the foreclosure deed attached to Hendrix's affidavit does not confirm Hendrix's affidavit testimony that the property was sold for a credit bid of $1,100,000, it also does not *contradict* Hendrix's testimony. *FFP* is therefore inapplicable. Myers does not point out any way that Hendrix's testimony was not clear, positive, and direct, was not free from contradictions and inconsistencies, and could not have been readily controverted, and we do not see any such problems with his testimony. We hold that Hendrix's testimony was sufficient to establish the outstanding balance on the note at the time of foreclosure and the amount that Southwest paid at the foreclosure and credited on the note. We overrule Myers's first point.

In his second point, Myers argues that the trial court erred by denying his right under property code section 51.003 to have any deficiency reduced by the fair market value of the property because that issue was not before the trial court when it granted summary judgment for Southwest. Myers's specific complaint under this point arises from the timing of Southwest's reply to his summary judgment response. He argues that Southwest did not timely address his defense under 51.003 in its motion for summary judgment or response, and therefore the trial court could not have properly granted summary judgment against him on the defense.

After Southwest filed its summary judgment motion, Myers amended his answer and filed a summary judgment response raising section 51.003.

9

Southwest's reply to his response pointed out the following provisions of the guaranty he had signed:

> Bank may at any time, without the consent of or notice to Guarantor, without incurring responsibility to Guarantor and without impairing, releasing, reducing[,] or affecting the obligations of Guarantor hereunder: . . . (iii) sell, exchange, release, surrender, subordinate, realize upon[,] or otherwise deal with in any manner and in any order any collateral for all or any part of the Guaranteed Indebtedness or this Guaranty or setoff against all or any part of the Guaranteed Indebtedness. . . .
>
> . . . .
>
> . . . Guarantor hereby further waives and releases all claims, causes of action, defenses[,] and offsets for any act or omission of Bank, its directors, officers, employees, representatives[,] or agents in connection with Bank's administration of the Guaranteed Indebtedness, except for Bank's willful misconduct and gross negligence.
>
> . . . .
>
> Guarantor agrees that its obligations under this Guaranty shall not be released, diminished, impaired, reduced[,] or affected by the occurrence of any one or more of the following events: . . . (iv) the taking or accepting of any collateral for all or any part of the Guaranteed Indebtedness or this Guaranty; . . . (x) any other circumstance which might otherwise constitute a defense available to, or discharge of, Borrower, Guarantor[,] or any other guarantor of all or any part of the Guaranteed Indebtedness.

Southwest argued that by this language, Myers had waived section 51.003's right to an offset.

This reply was filed the day before the summary judgment hearing. At the hearing, the trial court heard arguments related to the reply and stated that it took

10

judicial notice of the reply. In its judgment, the trial court specifically found that Myers had waived his right under section 51.003.

Southwest's summary judgment motion did not address Myers's section 51.003 defense—a defense Myers did not plead until after Southwest had already filed the motion. Myers contends that under rule 63 of the rules of civil procedure,[14] Southwest could not file its reply addressing his defense as late as it did without leave of court. And Myers contends that because Southwest's motion did not address section 51.003, and because its reply was filed too close to the summary judgment hearing, there were no summary judgment grounds addressing section 51.003. As Myers points out, summary judgment may not be granted on a ground not included in a motion.[15]

Southwest counters Myers's point with several arguments, including an argument that Myers failed to bring forward any evidence on his affirmative defense, and therefore his assertion of section 51.003 could not defeat its right to summary judgment. We agree.

Section 51.003 provides an affirmative defense to the traditional deficiency calculation based on the amount of a foreclosure sale.[16] When a party invokes

---

[14]Tex. R. Civ. P. 63.

[15]*McConnell v. Southside I.S.D.*, 858 S.W.2d 337, 341 (Tex. 1993).

[16]*Moayedi v. Interstate 35/Chisam Rd., L.P.*, 438 S.W.3d 1, at 6 (Tex. 2014) (stating that section 51.003 provides a defense to the traditional definition of deficiency, which is based on the foreclosure proceeds, in the form of "an offset that otherwise would not be available"); *Waterway Ranch, LLC v. Tex.*

section 51.003, the parties must provide the trial court with evidence of the property's fair market value at the time of the foreclosure sale.[17] This evidence can include (but is not limited to) evidence of comparable sales, cost of sale, and expert opinion testimony.[18] If no competent evidence is provided to the trial court, the court must use the sale price at the foreclosure sale to compute the deficiency.[19]

A party relying on an affirmative defense such as section 51.003 to avoid summary judgment must produce evidence that raises a fact issue on each element of the affirmative defense.[20] Because Myers was relying on section 51.003 to avoid Southwest's right to a deficiency judgment based on the foreclosure sale price, he had the burden to produce evidence of the fair market value. Myers did not, however, produce any evidence of fair market value.

Because Myers had the burden to produce evidence on his affirmative defense but did not do so, by statute the trial court had to use the foreclosure

---

*Bank Fin.*, No. 02-13-00350-CV, 2014 WL 1389752, at *2, *4 (Tex. App.—Fort Worth Apr. 10, 2014, pet. dism'd) (mem. op.) (stating that the section 51.003 offset is an affirmative defense).

[17]Tex. Prop. Code Ann. § 51.003(b).

[18]*Id.*

[19]*Id.* § 51.003(c).

[20]*Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984).

sale price to compute the deficiency.[21] Accordingly, the trial court did not need to consider whether Myers had waived his section 51.003 defense because even if Myers did not waive the defense by signing the guaranty,[22] he failed to meet his burden on the affirmative defense.[23] Accordingly, the trial court did not err by determining the amount of the deficiency based on the foreclosure sale price.

In his reply brief, Myers disputes Southwest's reading of *Bauer v. Jasso*[24] regarding the burden of proof on an affirmative defense in the context of a summary judgment. Southwest cited this case for the proposition that a plaintiff moving for summary judgment may ignore an affirmative defense pled by the nonmovant defendant. It argued that a party who relies on an affirmative defense to defeat summary judgment must come forward with summary judgment evidence to raise a fact issue on each element of that defense. Myers counters that "*Bauer* actually held the opposite of what Appellee contends, and Appellee certainly cannot ignore Appellant's affirmative defense."

As Myers points out in his brief, the court of appeals in *Bauer* held that "the trial court improperly required Bauer to prove his affirmative defense before

---

[21] *Id.*

[22] *See Moayedi*, 438 S.W.3d, at 6 (holding that the offset right under property code section 51.003 is a defense that may be waived and that by signing the guaranty agreement at issue, Moayedi waived section 51.003).

[23] *See Brownlee*, 665 S.W.2d at 112.

[24] 946 S.W.2d 552, 555 (Tex. App.—Corpus Christi 1997, no writ).

trial."[25]   But Southwest does not argue that Myers was required to *prove* his affirmative defense to defeat its right to summary judgment.  It argues that Myers was required to *raise a fact issue* on his affirmative defense, which is exactly the standard set out by the Corpus Christi court of appeals in *Bauer.*[26]  To the extent that Myers argues that under the law, he had no burden to raise a fact issue on his affirmative defense once Southwest showed its entitlement to judgment, he is simply wrong.[27]

Myers then argues that Southwest's own summary judgment evidence raised a fact issue on his affirmative defense because "[a]n alleged deficiency exists" between the foreclosure sale price and the outstanding balance on the note.  But the evidence that a deficiency exists is not the kind of evidence required under section 51.003.[28]  Section 51.003 presumes a deficiency, and the question is how the deficiency should be calculated.  Myers was required to produce evidence on the property's fair market value at the time of foreclosure, and if he did not do so, the trial court had to use the foreclosure sale price.[29]  The fact that a deficiency existed between how much the property sold for at

---

[25]*Id.* at 556.

[26]*Id.* at 555.

[27]*See Brownlee*, 665 S.W.2d at 112.

[28]*See* Tex. Prop. Code Ann. § 51.003.

[29]*Id.*

foreclosure and the outstanding balance does not provide evidence of the fair market value of the property.

Myers then argues in his reply brief that by amending his answer to assert section 51.003, he established his right to have a deficiency calculation performed and offset, and therefore "the damages portion of the summary judgment were no longer properly before the trial court." The proceedings in this case are distinguishable from *Sosa v. Central Power & Light*,[30] on which Myers relies. In that case, the defendants filed a motion for summary judgment on the ground of limitations. A defendant seeking summary judgment on the defense of limitations has the burden to establish that defense.[31] The defendants in *Sosa* attempted to meet their burden by arguing that the plaintiffs' own pleadings established that the plaintiffs' claims were barred by limitations.[32] The plaintiffs then amended their petition to remove the statements on which the defendants had relied in their motion. The defendants' motion, which was based entirely on the plaintiffs pleading themselves out of court, no longer had any basis. Summary judgment was therefore improper.[33]

---

[30]909 S.W.2d 893, 895 (Tex. 1995).

[31]*See Canada v. Canada*, No. 02-11-00483-CV, 2013 WL 1759894, at *2 (Tex. App.—Fort Worth Apr. 25, 2013, no pet.) (mem. op.).

[32]*Sosa*, 909 S.W.2d at 894.

[33]*Id.* at 895.

Here, Southwest's allegations about the existence of a deficiency or the amount of the deficiency were not based on anything Myers said or did not say in his answer or amended answer. Its summary judgment motion was based on its own pleadings and evidence. *Sosa* does not help Myers. We overrule Myers's second point.

In Myers's third point, he argues that the trial court erred by denying his right under section 51.003 because he did not waive that right when he signed the guaranty. Because we have held that Myers failed to present evidence to raise a fact issue on his affirmative defense under section 51.003, we need not consider his third point.[34]

Myers's fourth and final point is that the trial court erred by granting Southwest its attorney's fees because Southwest failed "to provide timesheets or other sufficient evidence documenting its attorney's fees and there are controverting affidavits regarding the reasonableness of attorney's fees." Citing the Supreme Court of Texas's *El Apple* case,[35] Myers contends that Southwest's attorney was required to produce time sheets to be entitled to an award of fees.

This court has declined to extend *El Apple* to require time records in all cases in which an attorney uses the attorney's hourly rate to calculate the fee. In ordinary hourly-fee breach of contract cases, "[t]ime sheets or other detailed hour

---

[34] *See* Tex. R. App. P. 47.1.

[35] *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 764 (Tex. 2012).

16

calculations are not required if the testimony regarding the hours of work required is not speculative."[36]

In this was a breach of contract case, Southwest was not required to use the lodestar method.[37] Southwest was entitled to recover a "reasonable" fee under civil practice and remedies code section 38.001.[38] Testimony about the reasonableness of a fee when supported by relevant *Arthur Anderson* factors is generally sufficient to support an award.[39] And in a breach of contract case, a trial court may "take judicial notice of the usual and customary attorney's fees and of the contents of the case," and the trial court must presume that the usual and customary attorney's fee was reasonable unless that presumption was rebutted.[40]

Taplett's affidavit did not attach time sheets. The affidavit did, however, contain testimony about how many hours Taplett had worked on the foreclosure and after the foreclosure, what tasks he had worked on after the foreclosure, what his hourly rate is, that the rate is reasonable in the area for the service

---

[36] *Ferrant v. Graham Assocs., Inc.*, No. 02-12-00190-CV, 2014 WL 1875825, at *7, *8 (Tex. App.—Fort Worth May 8, 2014, no pet.) (mem. op.) (on reh'g).

[37] *See id.*

[38] *See* Tex. Civ. Prac. & Rem. Code Ann. § 38.001 (West 2008).

[39] *Ferrant*, 2014 WL 1875825, at *9 (citing *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997)).

[40] *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 38.003, 38.004 (West 2008).

performed, and that the number of hours spent were reasonable and necessary in this type of case. He stated that he spent a total of "twenty-two (22) hours of attorney time" between February 21, 2013, and April 25, 2013, "in connection with the default by" Realty LP, Realty LLC, and Myers. He stated that he was familiar with the usual and customary fees charged by attorneys of similar experience in the area, and that the amount of time he spent and his hourly rate of $225 an hour were necessary, reasonable, customary, and appropriate. He listed some of the services he had performed after the foreclosure and an estimate of the time he would need to spend to finalize and enforce any judgment. Taplett concluded that in his opinion, $17,500 was a reasonable and necessary attorney's fee for the matter. This testimony was sufficient to support the trial court's award.[41]

Myers asserts in his reply brief that Taplett used the lodestar method to calculate his fee, and under *El Apple*, Southwest was therefore required to produce timesheets. In *Long v. Griffin,* the Supreme Court of Texas characterized the fee calculation used in the case as a lodestar fee because the two attorneys in the case "relat[ed] the hours worked . . . multiplied by their hourly rates for a total fee."[42] Thus, Myers argues that because Taplett used his hourly fee and number of hours worked in testifying about the reasonableness of his

[41] *See Ferrant*, 2014 WL 1875825, at *9.

[42] 442 S.W.3d 253, 255 (Tex. 2014).

18

fee, the production of time sheets was required.  But Myers is mistaken about the Supreme Court's documentary requirements for lodestar fee cases, even if we characterized the fee in this case as a lodestar fee.

In *City of Laredo v. Montano*, the Supreme Court of Texas specifically stated that *El Apple* does not require an attorney seeking fees to *produce* time sheets.[43]  Rather, *El Apple* states that to be awarded a fee based on the lodestar method, the attorney will usually need to *keep* time records.[44]  An attorney's testimony about his or her work can establish a fee under the lodestar method, and therefore time records or billing statements are not strictly necessary.[45]  But "'in all but the simplest cases, the attorney would probably have to refer to some type of record or documentation to provide th[e] information'" about the work performed by the attorney.[46]  In other words, without documenting the work done and the time spent, an attorney would usually not be able to accurately testify about such matters.  Accordingly, "attorneys using the lodestar method to shift their fee to their opponent" are encouraged by the Supreme Court "to keep contemporaneous records of their time as they would for their own client."[47]  The

---

[43]414 S.W.3d 731, 736 (Tex. 2013).

[44]*See id.*

[45]*Id.*

[46]*Id.* (citation omitted).

[47]*Id.*

court in *Montano* went on to uphold a fee award based on the attorney's testimony, not documentary evidence produced in the trial court.[48] Thus, characterizing the attorney fee award as a lodestar fee would mean that Taplett was probably required to keep track of his time spent on the case—and his affidavit testimony includes the hours he worked on a number of tasks, indicating that he kept track of his time—but he was not required to produce the record of his time.

Myers also argues that Taplett was required to but failed to segregate his fees for the work performed in prosecution of Southwest's claims against Myers, Realty LP, and Realty LLP. In response, Southwest argues that segregation was not required because the fees were incurred in connection with claims arising out of the same transaction and were so interrelated that their prosecution entailed proof of essentially the same facts. Southwest also argues that Myers failed to preserve his complaint because he did not object to the lack of segregation.

Myers's attorney's affidavit pointed out that fees were not segregated, and he mentioned in the middle of his argument at the summary judgment hearing that there was no segregation of fees. It is not clear from the record, however, whether the trial court sustained Myer's objection, overruled it, or ignored it.[49]

[48] *Id.* at 737.

[49] *See* Tex. R. App. P. 33.1(a).

20

But assuming that Myers preserved his complaint, we disagree that the award was improper.

"A party seeking attorney's fees must show that the fees were incurred on a claim that allows recovery of such fees, and thus is ordinarily required to segregate fees incurred on claims allowing recovery of fees from those that do not"[50] and to segregate fees related to claims against different defendants when the party has a claim for fees against only one of the defendants.[51] But segregation is not required when legal services advance both recoverable and unrecoverable claims[52] that "are dependent upon the same set of facts or circumstances and thus are intertwined to the point of being inseparable."[53] Fees must be segregated, however, when an attorney's fees relate *solely* to a claim for which the fees are unrecoverable.[54]

---

[50] *Stewart Title Guar. Co. v. Aiello*, 941 S.W.2d 68, 73 (Tex. 1997).

[51] *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10–11 (Tex. 1991) (noting duty to segregate fees owed by settling defendants from nonsettling defendants); *City of Austin v. Roberson*, No. 13-06-218-CV, 2008 WL 802315, at *3 (Tex. App.—Corpus Christi Mar. 27, 2008, no pet.) (mem. op.) (noting fees must be segregated among different defendants when fee claim is against only one defendant).

[52] *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313–14 (Tex. 2006).

[53] *Id.* at 311; *Aiello*, 941 S.W.2d at 73 (quotation marks omitted).

[54] *Chapa*, 212 S.W.3d at 313–14.

As Myers acknowledges, the lawsuit against all three original defendants involved the same loan, note, property, and deed of trust. All the claims arose out of the foreclosure of the property under the deed of trust. All the claims involved a showing of the foreclosure and the resulting deficiency. The prosecution of the claims against all three defendants entailed proof of essentially the same facts and circumstances.[55]

And as Myers notes in his reply brief, Taplett asserted that he spent twenty-two hours on the foreclosure proceedings alone, which at his hourly rate incurred $4,950 in fees, nearly the whole amount awarded. Taplett further stated that in his opinion, it would take at least ten hours of time to finalize and enforce any judgment rendered in Southwest's favor. That testimony relates to tasks performed in the claim against Myers and is sufficient to support the award.[56]

Furthermore, Myers's own attorney conceded that $5,000 would constitute a reasonable fee. He stated in his controverting affidavit that "a reasonable fee should not exceed $5,000." Myers argues that this statement was not a concession that a $5,000 fee would be reasonable, but we disagree. He essentially stated that a reasonable fee could be as much as but not more than $5,000, and that is exactly what the trial court awarded.

---

[55] *See Sterling*, 822 S.W.2d at 10–11.

[56] *See Montano*, 414 S.W.3d at 737 (observing that an attorney's testimony about her unbilled trial work was some evidence on which to base an award of attorney's fees "because it concerns contemporaneous or immediately completed work for which she had not had time to bill, or presumably even record").

22

Finally, Myers argues that the award was erroneous because where there are controverting affidavits regarding attorney's fees, awarding attorney's fees in summary judgment is improper. But in his controverting affidavit, Myers's attorney conceded that a fee up to $5,000 could be a reasonable fee. Myers's attorney's controverting affidavit therefore supported the amount of the trial court's award. We overrule Myers's fourth issue.

## Conclusion

Having overruled Myers's fourth issue, we affirm the trial court's judgment.


/s/ Lee Ann Dauphinot
LEE ANN DAUPHINOT
JUSTICE

PANEL:  DAUPHINOT, GARDNER, and WALKER, JJ.

DELIVERED:  December 11, 2014

23