# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-23-00506-CV

---

**CCR Roofing, LLC, and CCR Commercial Roofing, LLC, Appellants,**

**v.**

**Chase Garner and Richard Weston, Appellees**

---

**FROM THE 53RD DISTRICT COURT OF TRAVIS COUNTY**
**NO. D-1-GN-20-003696, THE HONORABLE LAURIE EISERLOH, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Chase Garner and Richard Weston sued CCR Roofing, LLC (CCR), and CCR Commercial Roofing, LLC (CCR Commercial) (collectively, the CCR Companies), for sales commissions, plus attorney's fees, growing out of their sales efforts on two roofing projects. At trial, the jury found in favor of Garner and Weston. Consistent with the jury verdict, the trial court rendered judgment awarding Garner $83,554.37 in damages and $30,000 attorney's fees, and awarding Weston $67,656.24 in damages and $30,000 attorney's fees. The judgment also awarded Weston and Garner each 25% of any "future proceeds" received by the CCR Companies from the relevant projects. The CCR Companies perfected this appeal. We will modify the judgment to reduce the attorney's fee award to a combined total of $43,000 and affirm it as modified.

**FACTUAL AND PROCEDURAL BACKGROUND**

In August 2017, Hurricane Harvey struck the Rockport, Texas area. At that time Garner and Weston worked for the CCR Companies as commission salesmen in the roofing business. In 2018 the CCR Companies contracted with Roadrunner Restoration to provide roofing services on two projects, referred to as the Key Allegro project and the Bayhouse project. Roadrunner served as the general contractor on those projects.

Garner and Weston were the CCR Companies' salespersons who sold the Key Allegro and Bayhouse projects. They had worked for the CCR Companies for a number of years and were compensated based on commission, which was calculated by subtracting the job cost from the proceeds received to determine the profit amount, multiplied by their commission percentage. They testified that their commission was 50% of the profit derived from a project. With respect to the Key Allegro and Bayhouse projects, they agreed between themselves to split the total commission, such that they would each receive a 25% commission.

The CCR Companies proceeded to perform roofing services pursuant to the contracts it had with Roadrunner, but Roadrunner did not fully compensate them for the work. The record indicates that litigation is currently ongoing between CCR Commercial and Roadrunner in the District Court of Harris County, Texas.

Beyond a relatively small amount of commissions that it had already advanced to Garner and Weston, the CCR Companies declined to pay them their full commissions for these jobs. The CCR Companies claimed that they were entitled to add to the job costs of both projects whatever litigation expenses they incurred in their efforts to collect the money allegedly due them from Roadrunner and that as long as that litigation continued they could not ascertain how much profit they would make on the projects. Not knowing what their final profit would be on the two

2

projects, the CCR Companies asserted that until the litigation was concluded it was impossible to determine the amount of Garner's and Weston's commissions. The CCR Companies also later contended that they were entitled to add a 10% "overhead" charge to the job costs, thereby further reducing the profit from the jobs.

Garner and Weston sued the CCR Companies to recover their respective commissions as well as their share of any proceeds from the jobs that might be collected in the future. Trial was to a jury.

At the time of trial, the parties stipulated that Roadrunner had already paid the CCR Companies $696,285.66 for the Key Allegro project, and the record contains evidence that the total job costs for that project were $437,989.42. They also stipulated that Roadrunner had already paid the CCR Companies $908,746.50 for the Bayhouse project, and the record contains evidence that the job costs for that project were $736,417.80. The record also contains evidence that the CCR Companies had previously advanced commissions of $40,000 to Weston and $24,101.87 to Garner for these projects. Finally, the record shows that the CCR Companies contend Roadrunner still owes them $203,224.69 on the Key Allegro project and $310,327.81 on the Bayhouse project.

The jury found that CCR had failed to comply with its commission agreements with Garner and Weston but found that CCR Commercial had not failed to comply. Based on the jury's findings, the trial court awarded Garner $83,554.37 in damages and Weston $67,656.24 in damages against CCR. Also consistent with the jury's findings, the court awarded attorney's fees of $30,000 each to Garner and Weston against CCR.

Over the CCR Companies' objection, Jury Questions 7 and 15 asked the jury if Garner and Weston were each entitled to "25% of any future proceeds received by CCR Roofing, LLC or CCR Commercial Roofing, LLC from the projects." The CCR Companies argued, as they

3

do in this Court, that they were entitled to add to the job costs of both projects a 10% overhead charge and also to add whatever litigation expenses they incurred in attempting to collect payment from Roadrunner. They contended that the use of the term "proceeds" (as opposed to "profits") in Questions 7 and 15 effectively prevented them from adding those post-construction expenses to its job costs.

The trial court overruled their objection and submitted Questions 7 and 15 using the term "proceeds." The jury answered both questions affirmatively, and the trial court's judgment ordered that Garner and Weston "[are each] entitled to receive 25% of any future proceeds received by CCR Roofing, LLC or CCR Commercial Roofing, LLC from the Key Allegro or Bay House projects."

The CCR Companies perfected this appeal, in which they complain about the submission of Jury Questions 7 and 15 and about the award of attorney's fees to Garner and Weston.

## DISCUSSION

### I.      *Jury Questions 7 and 15*

In their first issue, the CCR Companies argue that the trial court abused its discretion in allowing the jury to award Garner and Weston a commission on "any future proceeds" received by the CCR Companies on the two projects. Jury Questions 7 stated: "Do you find that Richard Weston is entitled to 25% of any future proceeds received by CCR Roofing, LLC or CCR Commercial Roofing, LLC from the [Key Allegro and Bay House] projects?" Jury Question 15 asked the same for Garner. The jury answered "yes" to both questions on both projects.

Both sides agree that Garner and Weston were entitled to commissions on profits received from each project, i.e., proceeds received less the job costs of the project. The parties' disagreement pertains to how a project's "profit" is determined. Without citing any authority, the CCR Companies contend they were contractually permitted to add certain costs after the construction on each project had been completed. Specifically, they assert that they had the contractual right to add to the job cost an "overhead" assessment of 10% as well as any post-construction litigation expenses associated with collecting money from Roadrunner. Adding such costs to the equation would, of course, have the effect of reducing the amount of the CCR Companies' profit, thereby lowering the commissions due to Garner and Weston. In addition, because litigation was still ongoing with Roadrunner, the CCR Companies argued that they did not currently owe any commissions at all to Garner and Weston because the Companies could not know how much commission would be due until that litigation was finally resolved.

Garner and Weston testified that a 10% charge for overhead had never been assessed before and that they had never been told that it would be charged on these projects. They also testified that they had always been paid on the basis of proceeds received less *construction costs*. In the present case, the parties stipulated to the amounts of both proceeds received and construction costs. Thus, the only question for resolution is whether the CCR Companies could, under the parties' agreements, add overhead and post-construction litigation expenses in calculating the amount of profit derived from each of the projects and thus the amount of commissions due to Garner and Weston.

Although the parties do not address the issue, the question arises whether this is a matter of contractual ambiguity or contractual silence. Contractual ambiguity creates a question of fact for the factfinder to resolve, while contractual silence creates a question of law for the court.

*See Maxey v. Maxey*, 617 S.W.3d 207, 222–23 (Tex. App.—Houston [1st Dist.] 2020, no pet.) ("[W]hen a contract is silent, the question 'is not one of interpreting the language but, rather, one of determining its effect.'") (quoting *Providence Land Servs., LLC v. Jones*, 353 S.W.3d 538, 543 (Tex. App.—Eastland 2011, no pet.)); *E.P. Towne Ctr. Partners, L.P. v. Chopsticks, Inc.*, 242 S.W.3d 117, 122 (Tex. App.—El Paso 2007, no pet.) ("When a contract is silent on a particular issue, the court must determine the effect of the silence.").

The record here does not show that the specific issue of how a project's profit was to be calculated was expressly part of any contract between the parties, written or oral. Indeed, there is no evidence that it was discussed at all before construction on these projects was completed. Accordingly, we hold that the contracts were silent on this aspect of commission determination. We are therefore called on to decide the parties' intentions. "Despite the deficits inherent in the use of language, '[w]henever possible, courts must assess adverse arguments and resolve a text's meaning as a matter of law.'" *Board of Regents of Univ. of Tex. Sys. v. IDEXX Labs., Inc.*, 691 S.W.3d 438, 443 (Tex. 2024) (quoting *U.S. Polyco, Inc. v. Texas Cent. Bus. Lines Corp.*, 681 S.W.3d 383, 389 (Tex. 2023)).

It is error for a trial court to submit a question of law to the jury. *Grohman v. Kahlig*, 318 S.W.3d 882, 887 (Tex. 2010). "However, the error is harmless if the jury answers the question of law correctly or if it can be deemed immaterial and disregarded by the trial court." *Id.* Here, the trial court could have disregarded the jury's answers to Questions 7 and 15 as immaterial. By rendering the judgment it did, the trial court effectively ruled that the CCR Companies were not entitled to add general overhead or post-construction litigation expenses to the "job costs" of the

projects in calculating the commissions due Garner and Weston. Based on Garner's and Weston's testimony, we agree; accordingly, the trial court did not err in so ruling.[1]

## II.      Presentment

In their third issue, the CCR Companies assert that the trial court erred in awarding any attorney's fees to Garner and Weston because there was no evidence that the claim had been presented to them before trial.

To recover attorney's fees under Chapter 38 of the Texas Civil Practice and Remedies Code, "the claimant must present the claim to the opposing party or to a duly authorized agent of the opposing party." Tex. Civ. Prac. & Rem. Code § 38.002(2). No particular form of presentment is required; the demand or request may be written or oral. *DeLeon v. Lacey*, No. 03-13-00292-CV, 2015 WL 4449436, at *5 (Tex. App.—Austin July 15, 2015, no pet.) (mem. op.) (citing *Jones v. Kelley*, 614 S.W.2d 95, 100 (Tex.1981)). "All that is necessary [for presentment] is that a party show that its assertion of a debt or claim and a request for compliance was made to the opposing party, and the opposing party refused to pay the claim." *Ferch v. Baschnagel*, No. 03-04-00605-CV, 2009 WL 349149, at *11 (Tex. App.—Austin Feb. 13, 2009, no pet.) (mem. op.). Moreover, "[a] claimant is not required to make a demand of the exact amount it is entitled to recover." *Thompson v. Buechler*, No. 03-22-00034-CV, 2023 WL 4770427, at *11 (Tex. App.—

---

[1]  If, on the other hand, it could be said that the evidence raised a contractual *ambiguity*, the jury was called on to resolve the parties' intent. By asking whether Garner and Weston were entitled to a percentage of future "proceeds" received (as opposed to future "profits," as requested by the CCR Companies' attorney during the charge conference), Questions 7 and 15 allowed the jury to determine that issue. The record contains sufficient evidence to support the jury's findings. Either way, therefore, the trial court did not err or abuse its discretion in rendering the judgment it did.

Austin July 27, 2023, pet. denied) (mem. op.) (quoting *West Beach Marina, Ltd. v. Erdeljac*, 94 S.W.3d 248, 269 (Tex. App.—Austin 2002, no pet.)).

In the present case, Weston sent the CCR Companies both a letter and an email demanding payment. Garner did not make a written demand but had "conversations" with Aaron Washburn (the president and owner of CCR and 50% owner of CCR Commercial) in which Garner requested to be paid and Washburn responded that the CCR Companies could not pay him because they had not yet received all the money due them from Roadrunner. This is sufficient evidence of presentment. We overrule the CCR Companies' third issue.

### III. Evidence of attorney's fees

In their second issue, the CCR Companies argue that the evidence was legally insufficient to support the jury's award of attorney's fees.

In addition to the amount of a valid claim and costs, a person may recover reasonable attorney's fees if the claim is for, among other things, breach of an oral or written contract. *See* Tex. Civ. Prac. & Rem. Code § 38.001. The Texas Supreme Court's opinion in *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 487 (Tex. 2019), contains a thorough discussion of fee-shifting and attorney's fee jurisprudence. The court began by noting:

> [T]o secure an award of attorney's fees from an opponent, the prevailing party must prove that: (1) recovery of attorney's fees is legally authorized, and (2) the requested attorney's fees are reasonable and necessary for the legal representation, so that such an award will compensate the prevailing party generally for its losses resulting from the litigation process.

*Id.*

The so-called "traditional" method of determining the amount of recoverable attorney's fees was set forth in *Arthur Andersen & Co. v. Perry Equipment Corp.*, 945 S.W.2d 812

8

(Tex. 1997), which identified eight non-exclusive factors to guide the fact finder in determining

the reasonableness and necessity of attorney's fees:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;
> (2) the likelihood ... that the acceptance of the particular employment will preclude other employment by the lawyer;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;
> (5) the time limitations imposed by the client or by the circumstances;
> (6) the nature and length of the professional relationship with the client;
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
> (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Id.* at 818.

In 2012 the court introduced the "lodestar" method, under which the factfinder must

first determine the reasonable hours spent by counsel in the case and a reasonable hourly rate for

such work, then multiply the number of such hours by the applicable rate to produce the base fee

or lodestar. *See El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760 (Tex. 2012). In a "second step"

permitted by this method, the base lodestar can be adjusted up or down "if relevant factors indicate

an adjustment is necessary to reach a reasonable fee in the case." *Id.* The court in *El Apple* held

that proof of reasonable hours "should include the basic facts underlying the lodestar, which are:

(1) the nature of the work, (2) who performed the services and their rate, (3) approximately when

the services were performed, and (4) the number of hours worked." *Id.* As the court later

emphasized in *City of Laredo v. Montano*, 414 S.W.3d 731 (Tex. 2013), time estimates based on

generalities are not sufficient to support a fee-shifting award. *Id.* at 736.

The court in *Rohrmoos* explained that "the lodestar method developed as a 'short

hand version' of the *Arthur Andersen* factors and was never intended to be a separate test or

9

method." 578 S.W.3d at 496. Rather, the lodestar method "appl[ies] to any situation in which an objective calculation of reasonable hours worked times a reasonable rate can be employed." *Id.* at 498. Indeed, the court held that "there is a presumption that the base lodestar calculation, when supported by sufficient evidence, reflects the reasonable and necessary attorney's fees that can be shifted to the non-prevailing party." *Id.* at 499.

As to the quantum of evidence required, the court in *Rohrmoos* again affirmed that "[s]ufficient evidence includes, at a minimum, evidence of (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services." *Id.*

Significantly, with respect to the second part of *El Apple*'s two-step analysis—which allows the lodestar base to be adjusted up or down based on "relevant considerations"—the court in *Rohrmoos* held:

> [T]he base lodestar figure accounts for most of the relevant *Arthur Andersen* considerations. *And an enhancement or reduction of the base lodestar figure cannot be based on a consideration that is subsumed in the first step of the lodestar method*. As in the federal courts, the base lodestar calculation usually includes at least the following considerations from *Arthur Andersen*: . . . 'whether the fee is fixed or contingent on results obtained' . . . .

*Id.* at 500 (emphasis added, citations omitted). Relying especially on the United States Supreme Court's opinion in *City of Burlington v. Dague*, 505 U.S. 557, 562–63 (1992), in which the Supreme Court disallowed an enhancement for contingency fee because it would likely duplicate in substantial part considerations already subsumed in the base lodestar calculation, the court in *Rohrmoos* held that:

These considerations [from *Arthur Andersen*] therefore may not be used to enhance or reduce the base calculation to the extent that they are already reflected in the reasonable hours worked and reasonable hourly rate. If a fee claimant seeks an enhancement, it must produce specific evidence showing that a higher amount is necessary to achieve a reasonable fee award.

578 S.W.3d at 501.

Quoting from another United States Supreme Court case, the *Rohrmoos* opinion stated that such enhancement or reduction would in all likelihood be rare: "[T]here is a 'strong presumption' that the [base] lodestar figure is reasonable, but that presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Id.* at 502 (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 550 (2010)).

In the present case, the attorney for Garner and Weston testified about his fees. He testified that he had a 40% contingency-fee agreement but that for purposes of the lodestar calculation an hourly fee of $500 was reasonable. He described in some detail the particular services he performed, when he performed them, and the reasonable amount of time required to perform them, thus satisfying the first step of the lodestar process. He testified that he had worked a total of approximately 86 hours on the case, which, when multiplied by the $500/hour charge he testified would be reasonable, resulted in a lodestar fee of $43,000.

He went on to testify, however, that if the jury agreed to award his clients damages of $150,000, as they were seeking, his 40% contingency agreement would result in a fee of $60,000. Thus, the chief basis for his request that the jury enhance the attorney's fee award from $43,000 to $60,000 was the fact that he was operating under a contingency-fee agreement. As the supreme court has held, however, whether the fee is fixed or contingent is a consideration that is

11

already subsumed within the *Arthur Andersen* factors and therefore may not be used to enhance the lodestar computation. *See id.* at 501; *see also Westheimer v. Ziemer*, No. 01-22-00967-CV, 2024 WL 3349096, at *5 (Tex. App.—Houston [1st Dist.] July 9, 2024, no pet.) ("[B]ecause the lodestar calculation usually already accounts for most of the *Arthur Andersen* considerations—including . . . whether the fee is fixed or contingent . . .—an enhancement or reduction of the fee ordinarily cannot be premised on these considerations."); *Milliken v. Turoff*, No. 14-19-00761-CV, 2021 WL 2156224, at *2–3 (Tex. App.—Houston [14th Dist.] May 27, 2021, no pet.) (mem. op.) ("In rare circumstances, the lodestar figure may be adjusted upward or downward, but only if specific evidence overcomes the presumption of reasonableness and shows that the adjustment is necessary to achieve a reasonable fee award. . . . The lodestar figure may not be adjusted based on considerations that are already inherently subsumed within the lodestar calculation.").

Here, the fact that the attorney for Garner and Weston was operating under a contingency-fee agreement was already subsumed within the base lodestar calculation of $43,000. Moreover, the evidence in this record does not bring this case into one of the rare instances in which an upward adjustment of the lodestar result is warranted. Accordingly, Garner and Weston are limited to $43,000 in the attorney's fees they can recover.

## CONCLUSION

Having concluded that Garner and Weston may not recover attorney's fees beyond the $43,000 sum produced by the lodestar calculation, we modify the trial court's judgment to reduce the amount of attorney's fees awarded to a combined total of $43,000. In all other respects, the trial court's judgment is affirmed.

_____

J. Woodfin Jones, Justice

Before Chief Justice Byrne, Justices Theofanis and Jones*

Modified and, as Modified, Affirmed

Filed:   February 5, 2025

*Before J. Woodfin Jones, Chief Justice (Retired), Third Court of Appeals, sitting by assignment. *See* Tex. Gov't Code § 74.003(b).