

**NUMBER 13-15-00348-CV**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI - EDINBURG**

TOTAL E&P USA, INC.,                                                    Appellant,

v.

MO-VAC SERVICES COMPANY, INC.,                                Appellee.

**On appeal from the 275th District Court
of Hidalgo County, Texas.**

# MEMORANDUM OPINION

**Before Justices Rodriguez, Benavides, and Longoria
Memorandum Opinion by Justice Benavides**

This case is before us for a second time. The underlying suit arose from appellant Total E&P USA, Inc.'s (Total) 2005 decision to award a multi-year oil field services contract to Pool Well Services, Co. a/k/a Nabors Well Services (Pool), instead of to appellee Mo-Vac Services Company, Inc. (Mo-Vac). Mo-Vac eventually sued Total and Pool alleging various claims under tort and contract theories. In 2009, a jury found in favor of Mo-Vac on each of its claims. The final judgment awarded $750,000 in damages

to Mo-Vac, and it provided in part that Total and Pool were jointly and severally liable to Mo-Vac for $433,912.50 in attorneys' fees.

On appeal, we reversed the judgment with respect to each of Mo-Vac's claims except its claim for breach of confidentiality agreement against Total. *Total E&P USA, Inc. v. Mo-Vac Serv. Co.*, No. 13-10-00021-CV, 2012 WL 3612505, at **3–8 (Tex. App.—Corpus Christi Aug. 23, 2012, pet. denied) (mem. op.). Accordingly, we reversed the entire damages award except for the jury's $100,000 award associated with the breach of confidentiality agreement claim. *Id.* at *10. We also reversed the award of attorneys' fees and remanded to the trial court "to determine the amount of fees earned with respect to" that specific claim. *Id.*

Following a new trial on remand solely on the issue of attorneys' fees, a jury awarded Mo-Vac $370,375 in fees attributable to the trial work associated with the breach of confidentiality agreement claim. The jury also found that Mo-Vac was entitled to prospective, conditional appellate attorneys' fees as follows: $25,000 for an appeal in this Court; $5,000 for a petition for review in the Texas Supreme Court; $12,000 for briefing on the merits at the Texas Supreme Court; and $8,000 for representation "through oral argument and the completion of proceedings" at the Texas Supreme Court. The trial court rendered judgment on the verdicts.

By two issues now on appeal, Total argues that the trial court erred in awarding $420,375 in trial and appellate attorneys' fees to Mo-Vac, contending that: (1) the trial court erred in allowing Mo-Vac's counsel to ask Total's counsel about fees he charged in an unrelated case; and (2) the fee award was excessive and supported by insufficient

2

evidence. We affirm.[1]

## I.    TESTIMONY REGARDING UNRELATED CASE

By its first issue, Total asserts that the trial court abused its discretion by allowing Mo-Vac's counsel to question and elicit testimony from Total's lead trial and appellate counsel, Edmundo O. Ramirez, regarding expert testimony Ramirez gave about attorneys' fees in an unrelated case. Total argues that Ramirez's testimony was irrelevant and prejudicial, and should not have been allowed by the trial court.

### A.    Standard of Review

Evidentiary rulings are committed to the trial court's sound discretion. *See U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 132 (Tex. 2012). A trial court abuses its discretion when it acts without regard for guiding rules or principles. *Id.*

### B.    Discussion

Evidence is "relevant"—and therefore generally admissible—if it has "any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." TEX. R. EVID. 401, 402. But a trial court may exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." *Id.* R. 403.

First, the record shows that before trial, Total designated two expert witnesses on the issue of the reasonableness and necessity of attorneys' fees in this case: Ramirez;

---

[1] Because this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.4.

3

and attorney Raymond L. Thomas. The record further shows that Mo-Vac designated its own trial and appellate counsel, Adrian R. Martinez and Alberto T. Garcia, as well as Ramirez to serve as its expert witnesses on the issue of the reasonableness and necessity of the attorneys' fees in this case.

At the new trial on attorneys' fees, Mo-Vac called Ramirez as its first witness.[2] Mo-Vac's counsel proceeded to ask Ramirez about a trial which took place several years prior at which Ramirez testified as an expert on attorneys' fees. Ramirez confirmed that the prior case was a breach of contract action concerning "the distribution rights of Playboy magazine in Mexico" and that he was paid by Playboy of North America to serve as an expert in that matter (the Playboy case). After Mo-Vac attempted to ask Ramirez about what he charged in that previous case, Total objected on relevance grounds, and the trial court sustained the objection. The following colloquy then occurred:

Q. [Mo-Vac's counsel]: Now, were you also in that case testifying about reasonable and necessary attorneys' fees?

A. [Ramirez] Correct. That's standard.

Q. Okay. And with respect to whose fees were you giving an opinion about in reasonable and necessary fee?

A. I was giving as to <u>Playboy</u> North America's lawyers, and their fees.

Q. And how many lawyers were there?

A. There was an army.

Q. Okay. Is that five? Is that 20? Is that—

A. That case was tried twice. It went up on appeal,

---

[2] Before the new trial on remand, Total filed a notice designating Ramirez and Ray Thomas as expert witnesses on attorneys' fees. Mo-Vac designated its lead trial and appellate counsel, Adrian Martinez, along with Alberto Garcia and Ramirez as expert witnesses on attorneys' fees.

4

came down. They hired more lawyers. I don't recall the exact number of lawyers. But probably anywhere in the two different cases, anywhere from 15 to 20 lawyers involved.

Q. Okay. And did you give testimony about what is a reasonable fee for those 15 or 20 lawyers?

[Total's counsel]: Your Honor, I will object to relevance. Mr. Ramirez is not being—we're not putting him on the stand as an expert as to attorneys' fees in this case. So I think it is irrelevant.

[Mo-Vac's counsel]: I designated Mr. Ramirez as an expert. He designated himself as an expert. He is an expert based on his qualifications. Whether he chooses to say, I'm testifying as an expert or not is irrelevant. He is an expert because he has specialized knowledge that will assist the jury. And if he's testified as an expert in other cases, I'd like to know what his opinions are there to judge them against the credibility of whatever opinions he might give here. So it's relevant to the credibility and experience.

[Total's counsel]: We're not putting him on as an expert on attorneys' fees. Mr. Ramirez explained earlier, it was only in case Mr. Thomas was not available. Mr. Thomas is here. We are not offering him. If we did offer him, then he could be cross examined on that. But he's putting him on, so we are not—

[Mo-Vac's counsel]: Your Honor, I designated Mr. Ramirez as an expert because he is an expert on attorneys' fees. So I designated him as an expert. And I haven't withdrawn that designation.

THE COURT: The objection is at this time sustained, Counsel.

[Mo-Vac's counsel]: Okay.

Q. [Mo-Vac's counsel] Now, Mr. Ramirez, you said that the *Playboy* case, just like this case, was appealed?

A. Yeah. But that was—I came in after the fact.

Q. Right. In the second trial you testified as an expert in the Playboy case?

A. Correct.

Q. Just like you're testifying as an expert in the second trial in this case?

A. I'm not testifying as an expert in this case. You can say that all you want to, but that's—

Q. Well, I've designated you as an expert.

A. Thank you for that. But that's not my role in this trial.

Q. Okay. Now, Mr. Ramirez, isn't it true that in the *Playboy* case, Playboy US recovered $410,000 for their breach of contract case?

[Total's counsel]: Objection, Your Honor, to relevance. Once again, Mr. Ramirez is not giving an opinion, an expert opinion. And [Mo-Vac's counsel] is forcing him to essentially.

[Mo-Vac's counsel]: Just asking if it's true that that's what the jury recovered in the *Playboy* case.

[Total's counsel]: It is not relevant because he is not an expert on attorneys' fees.

[Mo-Vac's counsel]: Your Honor, again, with all due respect, as Your Honor knows, and Counsel knows as well, what determines whether somebody is an expert is not their self-designation, but if they have experience, training and education.

THE COURT: What was your question, [Mo-Vac's counsel]?

[Mo-Vac's counsel]: Isn't it true that in the *Playboy* case, Playboy US recovered $410,000 for their breach of contract case?

[Total's counsel]: I don't know how those facts are relevant here.

[Mo-Vac's counsel]: Your Honor, we have an agreed Jury Charge that

6

has been filed. The parties agree that the eight factors from the *Arthur Anderson* case and Texas Supreme Court case says the amount of recovery is relevant to the amount of attorneys' fees. I'm going to ask him, my next question is: Didn't you testify that the lawyers should recover more than $2 million in attorneys' fees, when all they recovered was $400,000?

[Total's counsel]:     Your Honor, he's trying to cross—apologize.

[Mo-Vac's counsel]:     So—I'm sorry.

[Total's counsel]:     Go ahead.

[Mo-Vac's counsel]:     So I will ask him: Why is it okay in the *Playboy* case when you testified, but it is not okay here? It goes to the expert witnesses' credibility.

[Total's counsel]:     But he's cross-examining him when he hasn't given an opinion as to this case. So it is improper and irrelevant.

THE COURT:     Well, I will overrule the objection.

Ramirez then conceded that he had testified in the *Playboy* case that $2,180,000 was a reasonable amount for Playboy of North America's attorneys' fees, even though the jury eventually awarded only $410,000 in damages. However, he asserted that the *Playboy* case "is extremely different from this case." In particular, Ramirez noted that Playboy of North America initially sought to recover "like $28 million" for various contract-based causes of action; that it was also defending several claims; and that "there was no jury award" yet made in that case at the time he gave his expert testimony.

Throughout his testimony, Ramirez insisted that he was not testifying as an expert as to the reasonableness of Total's attorneys' fees, and he stated that he had no opinion

7

as to whether the amount charged by Total's counsel was reasonable.[3]

On appeal, Total contends that Mo-Vac's "sole purpose in calling Mr. Ramirez as an expert at trial was to introduce evidence through impeachment that would otherwise be inadmissible"—specifically, evidence regarding the amount of attorneys' fees awarded in the unrelated *Playboy* case. It cites case law establishing that, when the reasonableness of a prevailing party's attorneys' fees is at issue, the amount of fees incurred by the non-prevailing party is irrelevant. *See Duininck Bros., Inc. v. Howe Precast, Inc.*, No. 4:06-CV-441, 2008 WL 4411641, at *3 (E.D. Tex. Sept. 23, 2008) (mem. op. & order) (holding that evidence of defendants' attorneys' fees is not probative as to whether plaintiff's attorneys' fees are reasonable); *MCI Telecomms. Corp. v. Crowley*, 899 S.W.2d 399, 403–404 (Tex. App.—Fort Worth 1995, orig. proceeding) (holding that relator's billing records were "patently irrelevant," and therefore not discoverable, where sole issue was whether real party in interest's attorneys' fees were reasonable).

In response, Mo-Vac argues that its line of questioning was relevant because it bore on the issue of Ramirez's credibility as an expert. *See* TEX. R. EVID. 607 ("Any party, including the party that called the witness, may attack the witness's credibility."); TEX. R. EVID. 611(b) ("A witness may be cross-examined on any relevant matter, including credibility."). We agree with Mo-Vac.

Relevancy permits inquiry into the witness's interest, bias, motives, inclinations, and prejudices. *Hogue v. Kroger Store No. 107*, 875 S.W.2d 477, 480 (Tex. App.—Houston [1st Dist.] 1994, writ denied). Despite Ramirez's repeated assertions in his

---

[3] Ramirez conceded that, as counsel for Total, he designated himself as an expert witness on attorneys' fees. However, he stated that he did so only so that he would be able to testify in the event that his retained attorneys' fees expert, Thomas, was unavailable to testify.

8

testimony that he was not an expert in this case, the record shows that he designated himself as an expert as a contingency if attorney Thomas was unavailable to serve as Total's expert. Nevertheless, these statements alone did not remove Ramirez's status as an expert. As a result, Mo-Vac was within the bounds of relevancy to inquire about Ramirez's testimony regarding attorneys' fees in a previous case, dealing with a similar subject matter, and tried in the same venue as the present case. Accordingly, we conclude that the trial court did not abuse its discretion by overruling Total's relevancy objection. *See id.*

Total further argues that even if relevant, Mo-Vac's questioning of Ramirez was prejudicial because it was asked "solely for the purpose of introducing otherwise improper evidence through impeachment." As we stated, a trial court may exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403. We have already concluded that Mo-Vac's questioning was relevant, and the record shows that Mo-Vac questioned Ramirez to impeach his credibility as it pertained to his challenge of the reasonableness and necessity of Mo-Vac's attorneys' fees in this case. Therefore, we disagree with Total that this line of questioning, even if relevant, was substantially outweighed by any of the reasons articulated in rule of evidence 403. As a result, the trial court did not abuse its discretion.

Lastly, even assuming that the trial court abused its discretion in admitting Ramirez's testimony, such admission was harmless. As a general rule, error in the admission of testimony is deemed harmless and is waived if the objecting party

9

subsequently permits the same or similar evidence to be introduced without objection. *Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 907 (Tex. 2004). Here, similar questioning regarding the *Playboy* case took place with Total's expert, Raymond L. Thomas, without objection from Total. As a result, error, if any, related to Ramirez's testimony was rendered harmless. *See id.*

We overrule Total's first issue.

## II. EVIDENTIARY SUFFICIENCY

By its second issue, Total asserts that the jury's award of attorneys' fees in this case was grossly excessive and supported by legally and factually insufficient evidence.

### A. Standard of Review

When an appellant, such as Total, attacks the legal sufficiency of an adverse finding on an issue for which it did not have the burden of proof, the appellant must demonstrate that there is no evidence to support the adverse finding. *Editorial Caballero, S.A. de C.V. v. Playboy Enter., Inc.*, 359 S.W.3d 318, 328 (Tex. App.—Corpus Christi 2012, pet. denied) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005)). Such a no-evidence challenge will be sustained only if: (1) there is a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *City of Keller*, 168 S.W.3d at 810. In conducting a legal sufficiency review, we review the evidence presented at trial in the light most favorable to the jury's verdict and indulge every reasonable inference that would support it, crediting

10

favorable evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Editorial Caballero*, 359 S.W.3d at 329.

In reviewing a factual-sufficiency challenge to a jury finding on an issue on which the appellant, such as Total, did not have the burden of proof, we consider and weigh all of the evidence and set aside the verdict only if the evidence that supports the jury finding is so weak as to make the verdict clearly wrong and manifestly unjust. *Id.* at 329 (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986)). We must examine both the evidence supporting and that contrary to the judgment. *Id.* Additionally, the jury is the sole judge of witnesses' credibility, and it may choose to believe one witness over another; a reviewing court may not impose its own opinion to the contrary. *Id.*

The standard of review for an excessive damages complaint is factual sufficiency of the evidence. *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406 (Tex. 1998). Thus, the court of appeals should employ the same test for determining excessive damages as for any factual sufficiency question. *Id.*

**B.     Discussion**

**1.  Sufficiency of Fee Award under *El Apple***

Total first argues that the evidence is insufficient to support the jury's award of attorneys' fees because Mo-Vac's attorney failed to provide the jury with sufficient documentation supporting his work in this case.

A party applying for an award of attorneys' fees under the lodestar method bears the burden of documenting the hours expended on the litigation and the value of those hours. *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 761 (Tex. 2012). The starting point for determining a lodestar fee award is the number of hours reasonably expended on the

11

litigation. *Id.* at 762. The party who bears the burden of proof should include into evidence the basic facts underlying the lodestar, which are: (1) the nature of the work; (2) who performed the services and their rate; (3) approximately when the services were performed; and (4) the number of hours worked. *See id.* at 763. An attorney could, of course, testify to these details, but in all but the simplest cases, the attorney would probably have to refer to some type of record or documentation to provide this information. *Id.* When there is an expectation that the lodestar method will be used to calculate fees, attorneys should document their time much as they would for their own clients, that is, contemporaneous billing records or other documentation recorded reasonably close to the time when the work is performed. *Id.* Building on the holding in *El Apple*, the Texas Supreme Court later held that bare testimony from an attorney, absent written records of itemized times, tasks, and rates charged, amounted to insufficient evidence to prove reasonable attorneys' fees under lodestar. *See City of Laredo v. Montano*, 414 S.W.3d 731, 736 (Tex. 2013) (per curiam).

Total argues that the level of evidence and testimony provided by Mo-Vac's attorney, Adrian Martinez, regarding his fees, was comparable to the attorney who testified in *City of Laredo*. We disagree. In *City of Laredo*, the court held that an attorney who estimated his total hours worked on a case by multiplying the number of weeks of "active employment" on the case by a "factor of six," which represented the average hours per week he worked on the case was insufficient under *El Apple's* lodestar method of proof. *Id.* Furthermore, the court went on to express that its "puzzlement" deepened in that case upon finding out that the attorney "did not make any record of his time in the case or prepare any bills or invoices" and apparently did not how much he was owed in

12

this case until the time of trial. *Id.* The *City of Laredo* court also held that the attorneys' testimony that he spent "a lot of time getting ready for the lawsuit," conducted "a lot of legal research," visited the premises "many, many, many, many times," and spent "countless" hours on motions and depositions did not comply with what is required under *El Apple*. *Id.*

Mo-Vac's attorney's evidentiary proof of fees in this case is significantly more robust than the attorney in the *City of Laredo* case. First, the trial court admitted Mo-Vac's Exhibit 9, a 22-page written spreadsheet of specific dates, hours, and billing rate entries of numerous legal tasks performed by Martinez's law firm in the underlying case from March 2006 until May 2009. Specifically, Martinez testified that of all the time billed in Mo Vac's Exhibit 9 from March 2006 until he was deposed on February 27, 2009, "40 percent of that time" was spent prosecuting Mo-Vac's breach-of-confidentiality-agreement cause of action, or 257.25 total hours. Following his deposition, Martinez testified that he spent "about 1,639.25" hours in trial preparation and in trial itself for all of the underlying causes of action. Of those 1,639.25 hours, "90 percent" of that time was spent "to advance and prosecute the breach of confidentiality claim," or 1,481.50 hours. In sum, Martinez testified that the total trial time equaled 1,738.75 hours. Lastly, Martinez testified that in his opinion, he would be required to spend 125 hours to work on an appeal in this case. In the end, Martinez testified that his total billable hours in this case, including appellate work, amounted to 1,863.75 hours.

After reviewing this evidence in the light most favorable to the jury's verdict and indulging every reasonable inference that would support it, crediting favorable evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors

could not, we conclude that the evidence is legally sufficient to support the jury's award. *See El Apple*, 370 S.W.3d at 761–63; *Editorial Caballero*, 359 S.W.3d at 329; *see also City of Laredo*, 414 S.W.3d at 736. Furthermore, after considering and weighing all of the evidence supporting and contrary to the judgment, we cannot conclude that the evidence supporting the jury's verdict in this case is so weak as to make the verdict clearly wrong and manifestly unjust. *See Editorial Caballero*, 359 S.W.3d at 329.

**1.    Excessiveness of Fee**

Total next argues that the amount of attorneys' fees awarded in this case of $420,375 were "unreasonable and grossly disproportionate, under the particular facts of this case."

A factfinder should consider the following factors when considering the reasonableness of a fee:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;

(2) the likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

14

*Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997) (citing TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.04, *reprinted in* TEX. GOV'T CODE, tit. 2, subtit. G app. A, State Bar Rules, Art. X, § 9).

Total argues that the surviving cause of action in this case (breach of confidentiality agreement) was "only a small part of the much larger overall case" and thus, the jury's award was excessive. Total cites two cases for support. The first is *Smith v. Patrick W.Y. Tam Trust*. 296 S.W.3d 545, 546 (Tex. 2009). In *Smith*, the Patrick W.Y. Tam Trust (the Trust) sued Smith for breach of a lease agreement and sought damages in excess of $200,000 and attorney's fees of $47,438.75. *See id.* The jury awarded the Trust $65,000 in damages and nothing in attorney's fees. *See id.* The trial court rendered judgment that the Trust receive $65,000 in damages and rendered judgment notwithstanding the verdict awarding the Trust $7,500 in attorney's fees up to trial and up to $15,000 in attorney's fees for success at various stages of appeal. *See id.* The court of appeals vacated the $7,500 in attorney's fees and rendered judgment for $47,438.75 in damages. *Id.* On petition for review, the Texas Supreme Court reversed the court of appeals' judgment and remanded for a new trial on attorney's fees. *See id.* at 548–49. The Texas Supreme Court explained that although a jury "could have rationally concluded that, in light of the amount involved and the results obtained, a reasonable fee award was less than the full amount sought, no evidence supported the jury's refusal to award any attorney's fees." *Id.* at 548. We find *Smith* inapplicable and distinguishable. Unlike in *Smith*, controverted evidence was put forth before the jury, and the jury awarded a fee

less than what Mo-Vac sought (nearly $900,000) but more than what Total's expert believed was a reasonable fee ($40,000).

The next case Total relies upon is *Whythe II Corp. v. Stone*. 342 S.W.3d 96 (Tex. App.—Beaumont 2011, pet. denied). *Stone* concerned a fee dispute between Stone, a lawyer, and his former client, Whythe. *See id.* at 101. Stone intervened in a lawsuit between Whythe and its insurance company in order to collect his fee. *See id.* at 102. A jury ultimately awarded Stone attorney's fees of $314,420, with additional fees in the event of future appeals for Stone's suit for breach of contract against Whythe. *See id.* Stone represented Whythe under a contingent-fee agreement and received an attorney's fee awarded based upon a percentage of the attorney fee award that Stone obtained in the underlying insurance litigation. *See id.* at 108. The Beaumont court noted that while Stone's lead counsel testified as to the extent of time put forth in the underlying litigation, but he "did not try to determine a reasonable fee based upon an hourly rate" and based his request for attorney's fees solely on the percentage of the contingency-fee agreement. *Id.* at 107–08. The court held that the jury's fee award was excessive under the *Arthur Andersen* factors because the evidence presented in the case did not "provide sufficient justification for shifting the entire amount of the contingent fee to Wythe." *Id.* at 108. We likewise find *Stone* distinguishable based upon the record.

The record in this case shows that in addition to testifying about his experience and skills as an attorney, Martinez testified to spending 1,738.75 hours of trial work solely for the breach of confidentiality agreement cause of action. This amount of time, including a description of the specific tasks accomplished and the amount billed per hour, was documented and admitted into evidence. Martinez further testified to the length and

16

extent of his work in this case, including thousands of pages of documents he reviewed in preparation for the trial. The record also indicates that Martinez billed Mo-Vac $250 per hour, but Martinez testified at trial that a reasonable hourly rate for his work was $500 based upon his experience and skill of being a 35-year licensed lawyer.

Attorney Thomas testified on Total's behalf that based on his opinion after reviewing the record in this case, he did not believe that Martinez expended as much time on the breach of confidentiality agreement cause of action as he testified. Thomas further testified that $250 per hour is a reasonable fee for Martinez's services in this case, and stated that it was "cheap" for the quality and caliber of the representation that Mo-Vac received in this case. Lastly, Thomas opined that based upon the agreement between Mo-Vac and Martinez's law firm, and the total damages award of $100,000 on the breach of confidentiality agreement claim, $40,000 was a reasonable attorneys' fee award in this case.

The jury's award of $370,375 of attorneys' fees associated with the trial work in this case, plus $50,000 in conditional appellate fees was within the range of reasonable fees suggested by both parties. Using Martinez's figure of 1,738.75 hours of trial work multiplied by his suggested reasonable hourly rate of $500, his total requested fee for trial work totals: $869,375.00. Using Martinez's total-trial-hours figure multiplied by $250 per hour rate billed to Mo-Vac, Martinez's fee totals: $434,687.50. Thomas suggested a reasonable fee of $40,000. The jury awarded a figure less than those suggested by Mo-Vac, but more than the suggestion made by Total.

After considering and weighing all of the evidence supporting and contrary to the judgment, we cannot conclude that the evidence supporting the jury's verdict in this case

17

is so weak as to make the verdict clearly wrong and manifestly unjust. *See Editorial Caballero*, 359 S.W.3d at 329; *Ellis*, 971 S.W.2d at 406; *see also Arthur Andersen*, 945 S.W.2d at 818.

## 2. Summary

We conclude that the evidence is legally and factually sufficient to support the jury's award of attorneys' fees in this case. We overrule Total's second issue.

### III. CONCLUSION

We affirm the trial court's judgment.

GINA M. BENAVIDES,
Justice

Delivered and filed the
27th day of July, 2017.

18