FILED
17-0400
12/20/2017 7:49 AM
tex-21395273
SUPREME COURT OF TEXAS
BLAKE A. HAWTHORNE, CLERK

NO. 17-0400

_____

# IN THE SUPREME COURT OF TEXAS

_____

## DENNIS WEBB,

Petitioner/Cross-Respondent

v.

## STATE FARM LLOYDS.

Respondent/Cross-Petitioner

_____

On Petition for Review from the
Ninth Court of Appeals of Texas
Appellate Cause No. 09-15-00408-CV

_____

## CROSS-RESPONDENT DENNIS WEBB'S
## RESPONSE TO PETITION FOR REVIEW

_____

Gregory F. Cox
State Bar No. 00793561
John A. Cowan
State Bar No. 04912550
THE MOSTYN LAW FIRM
6280 Delaware Street
Beaumont, Texas 77706
Tel: (409) 832-2777
Fax: (409) 832-2703

**COUNSEL FOR DENNIS WEBB**

**TABLE OF CONTENTS**

Table of Contents ........................................................................................ ii

Index of Authorities ................................................................................... iii

Statement of Facts ........................................................................................1

Summary of the Argument...........................................................................4

Argument.......................................................................................................5

    I.   The district court did not err in overruling State Farm's objections to Peter Rabner's testimony, and there is nothing in State Farm's petition that warrants granting review. .....................................................5

    II.  The court of appeals ruling on attorneys' fees is consistent with this Court's prior rulings and presents no basis for granting review. ..................11

    III. There is no reason for the Court to grant review based on State Farm's alternative contention that Webb's attorneys' fees should be limited due to State Farm's settlement offer. .......................................................14

Conclusion and Prayer .............................................................................17

Certificate of Compliance .........................................................................18

Certificate of Service ................................................................................19

# INDEX OF AUTHORITIES

## Cases

*Arthur Andersen & Co. v. Perry Equip. Corp.*,
945 S.W.2d 812 (Tex. 1997) ............................................................................11

*Atlantic Richfield Co. v. Misty Products, Inc.*,
820 S.W.2d 414 (Tex. App.—Houston [14th Dist.] 1991, writ denied)..............10

*Caffe Ribs, Inc. v. State*,
487 S.W.3d 137 (Tex. 2016) ..............................................................................9

*City of Laredo v. Montano*,
414 S.W.3d 731 (Tex. 2013) ............................................................................13

*El Apple I, Ltd. v. Olivas*,
370 S.W.3d 757 (Tex. 2012) ............................................................................13

*G.T. Mgmt., Inc. v. Gonzalez*,
106 S.W.3d 880 (Tex. App.—Dallas 2003, no pet.)...........................................10

*Horizon Health Corp. v. Acadia Healthcare Co.*,
520 S.W.3d 848 (Tex. 2017) ............................................................................11

*In re Y.M.A.*,
111 S.W.3d 790 (Tex. App.—Fort Worth 2003, no pet.). ...................................10

*Long v. Griffin*,
442 S.W.3d 253 (Tex. 2014) ............................................................................13

*Midland W. Bldg. L.L.C. v. First Serv. Air Conditioning Contractors, Inc.*,
300 S.W.3d 738 (Tex. 2009). ...........................................................................14

*Ross v. St. Luke's Episcopal Hosp.*,
462 S.W.3d 496 (Tex. 2015) ............................................................................12

*Russell v. Russell*,
478 S.W.3d 36 (Tex. App.—Houston [14th Dist.] 2015, no pet.) .......................14

## Statutes

TEX. INS. CODE § 541.158(b) ............................................................................15

TEX. INS. CODE § 541.159.................................................................................14

TEX. INS. CODE § 541.159(a) ...................................................................... 15, 16

TEX. INS. CODE § 541.159(b) ...................................................................... 15, 16

**Rules**

TEX. R. APP. P. 33.1 ................................................................................. 10, 11

TEX. R. APP. P. 33.1(a) ....................................................................................12

TEX. R. APP. P. 38.1(i) .....................................................................................12

TEX. R. APP. P. 47.1 .........................................................................................15

TEX. R. APP. P. 53.2(f) .....................................................................................11

TEX. R. APP. P. 55.2 .........................................................................................11

TEX. R. APP. P. 56.1 ...........................................................................................6

**STATEMENT OF FACTS**

This is a first party insurance case in which Dennis Webb sued State Farm Lloyds and others for breach of contract and insurance code violations relating to its handling of his claim for damage caused by a plumbing leak. *See* CR8-25. The court of appeals correctly stated the nature of the case in that it is a first-party insurance case, and the facts as they relate to State Farm's petition for review.

In May of 2012, Webb opened the garage door and noticed a foot-wide semi-circle of water where the garage meets the driveway. Water had seeped up between the slab for the garage and the slab for the driveway, and it was very wet. 2RR209-12. As the day wore on, the wet spot got bigger, expanding up to two feet, and it continued to grow over the next few days. 2RR212-14. It was eventually a seven to eight foot wide area, and Webb also found that the water meter can was full of water and the yard was soggy all the way down to the street. 2RR222-224; 3RR93. Water was coming from a leak under the house, seeping down around the perimeter beam (which extends two feet down), and then coming up through the joint. *See* 2RR209-14. Webb contacted a plumber and called his insurance company. 2RR215; 3RR8.

The first adjuster State Farm sent out was Janice Warner. Warner took some pictures and left. 3RR9-10. A few days later, as the plumbers were finishing up, Webb called Warner out for a visit to take a look at the work. At the time of Warner's

1

second visit, there were still no cracked tiles or other visible damage, just a wet spot on the driveway and a soggy lawn. 3RR27-29, 93-96.

About three weeks later, in the beginning of June 2012, Webb started to see cracked tiles. 3RR13, 29. Webb first noticed hairline cracks in a few of the kitchen tiles near the island (about 32 feet from the leak), but most of the cracked tiles were in part of the dining area not far from the wall between the dining area and the garage where the leak was located. In addition, a fairly large crack developed on the garage floor in the general vicinity of the leak, and cracks developed in the brickwork above the garage doors. 2RR225-26; 3RR39-42, 52-54; *see* DX12. There were no unusual events (other than the leak) to explain the appearance of the cracks. 3RR29-31.

State Farm sent Brandon English (who testified as its engineering expert at trial) to inspect the property. English prepared a report stating that the foundation damage was not caused by a plumbing leak, and at the end of October 2012, State Farm sent a letter denying coverage based on English's report. 4RR209-13; PX16.

Webb was not satisfied with the way State Farm handled his claim and retained a lawyer and another engineer, Peter Rabner, to evaluate the claim. Taking into account all available data and eliminating possible causes not consistent with the evidence, Rabner concluded to a reasonable engineering probability that the damage most likely resulted from the plumbing leak. 3RR148-179. Rabner concluded that the most likely explanation was that the large amount of water

2

radiating out from the leak under the garage caused the expansive soils under the house to expand, leading to temporary heaving of the foundation, which then returned more or less to its original position as the water dissipated and the ground dried up. *See* 3RR141, 178-179.

As late as the time of his deposition, English could not say what caused the cracks in the tiles and the garage floor other than to say it was not the leak. He suggested seasonal changes or vegetation as possible causes for movement of the foundation, because both could change the moisture content under the foundation. 5RR216-17. At trial, he admitted that vegetation was not really a reasonable explanation. 5RR218-19. English admitted at trial that water under the foundation could cause the foundation to heave up, and that it could settle back down when the moisture dissipated, but insisted that could not have happened in Webb's case. 5RR215-16. Instead, he settled on "seasonal variations" leading to "shrinkage." *See* 5RR166-70. But he really offered no explanation for why the cracks would have suddenly appeared right after the leak, after 48 seasons of stability. 5RR219. In the absence of any good explanation, English suggested that Webb was lying about when the cracks appeared (even though at his deposition he had remarked about how honest and straightforward Webb was), and seemed to suggest that the cracks really were there before the leak, even though he admitted he had nothing to back that up. 5RR219-21.

After hearing all the evidence, the jury found that State Farm failed to comply with its obligations under the policy and that it violated the Insurance Code. CR688-97. State Farm appealed. The court of appeals rendered a judgment affirming the jury's award for breach of contract damages in the amount of $15,000, but reversing the jury's awards of actual damages and additional damages for Insurance Code violations, and remanding "for a new trial with respect to the attorney's fees recoverable on Webb's breach of contract claim." Both sides filed petitions for review.

## SUMMARY OF THE ARGUMENT

In its first issue, State Farm does not ask the Court to resolve some legal issue of importance to the jurisprudence of this state; it merely asks the Court to take sides in a "battle of the experts" and exclude Webb's expert because State Farm's expert (or lawyers) view things differently. There is no issue of law where the court of appeals held differently from any opinion of this Court or of any court of appeals on any important point of law, and there is no reason for this Court to grant review.

In its second issue, State Farm complains that Webb's attorney fee evidence included reconstructed time records, but State Farm does not cite any case holding that this is improper, and this Court has expressly permitted it in at least three cases, including the one cited in State Farm's petition. Moreover, even if State Farm raised a valid complaint, the result would not be to reverse and render, as State Farm

4

requests, but to remand for a new trial on attorneys' fees. This is precisely what the court of appeals already did.

State Farm's third issue, related to limiting the attorney fee recovery, involves an issue that the court of appeals did not reach and that has not yet been ruled upon by any court. It is a matter properly addressed to the district court, which is where it will go if the Court denies State Farm's petition (unless the Court grants the relief sought in Webb's petition, in which case it will be moot).

## ARGUMENT

## I. The district court did not err in overruling State Farm's objections to Peter Rabner's testimony, and there is nothing in State Farm's petition that warrants granting review.

A significant plumbing leak in a water line running under Webb's garage caused the expansive soils under the slab to expand, which lead to a temporary heaving of the foundation, which lead to cracking of some of the most susceptible materials—brittle materials like tile, the concrete garage floor, and the brick at the top of the column between the garage doors.

State Farm's corporate representative admitted that there were expansive soils underneath the Webb house and that the foundation moved (although he denied it until shown where he admitted it in his deposition) and that movement of the foundation caused the tile cracking (again, only after being shown his deposition). 4RR34-36. He also admitted that State Farm has no opinion as to what caused the foundation to move

5

(and again, only after being shown his deposition). 4RR36-37. So basically, State Farm's position was that there was movement, there was cracking, there were expansive soils, and a whole lot of water, but for some reason, State Farm refused to link them up. 4RR37-38. Rabner did connect the dots, and State Farm says letting him do so was reversible error.

Regardless of how State Farm tries to frame the issue, it is not a matter of any genuine legal question.  It boils down to a complaint that in evaluating the data, Webb's expert did not reach the conclusions that State Farm's lawyer did.  While State Farm's petition contains standard buzz words like "novel theory" and "analytical gap," (but surprisingly, no "*ipse dixit*"), it does not identify anything in the court of appeals opinion that conflicts with any other court of appeals on any important issue of law, nor does it identify any error of law of such importance to the state's jurisprudence as to warrant this Court's intervention.  *See* TEX. R. APP. P. 56.1.

State Farm complains that Rabner proposed a "novel theory" that the foundation moved up when the leak drenched the expansive soils under the slab, and sometime within the roughly three months after the leak was fixed settled back. This "novel theory" is just a matter of using reason and certain uncontroversial facts, like that there were expansive soils under Webb's house, expansive soils expand when they get wet, the leak caused a substantial amount of water to seep into the soil under

6

the slab, and after the leak was fixed, things would be expected to settle back to their previous condition.

Even State Farm's own expert admitted that water getting into the soils underneath the house could cause the soils to swell and that that water coming under the foundation could have caused it to heave up and then to come down again after the moisture dissipated. 5RR215-16. He acknowledged that the leak could cause clay swelling, and that clay swelling could move the foundation. 5RR123-24. He said that when clay soils get wet, they tend to swell, and "if it does move the foundation, generally it should manifest itself, it should show up somewhere as a crack, as a door out of alignment, as something in a -- in some of the more susceptible components of that structure." 5RR131. And that is what happened here. As Rabner pointed out, some things that are especially susceptible to damage from foundation movement are brittle materials like mortar and concrete and ceramic tile, as they are far more susceptible to breaking and cracking than things like sheetrock and framing members. 3RR148-49.

State Farm claims that this is somehow inconsistent with a couple elevation surveys performed years before the leak and one done about three months after, but elevation surveys are just snapshots that tell the position of the slab at the time they are taken. They do not show what happens between frames, and having the soil swell when it's wet and return to the previous pattern when the water source is removed is

perfectly consistent with survey data showing that the foundation had returned to equilibrium months after the leak was fixed. *See* 3RR220-222, 249.

State Farm also asserts that Rabner's opinions are all unreliable because the tile was supposedly cracked before the leak. This is just not true. The evidence was unequivocal and uncontradicted that the cracks in the tiles first appeared after the leak. This was demonstrated not only by Webb's testimony, but also by State Farm's contact logs from May of 2012 (*i.e.*, Warner's two visits prior to the appearance of the cracks). *See* 3RR 139-41, 150-51,222-23, 228-29. Furthermore, none of this was contradicted by any supposed "objective data" showing the cracks had been there for several years prior to the leak.[1]

State Farm also claims that Rabner's testimony is unreliable because he

---

[1] State Farm says on page 12 of the petition that Rabner ignored "photographs showing pre-existing cracks." There were no such photographs in the sense of photographs taken before the leak that showed that the tiles were cracked as they were after. Nor does the barely legible scrawl the Hurricane Ike "field notes" referenced in footnote 4 on page 12 of State Farm's petition show that the cracks that appeared after the leak were really there all along. (Those "field notes" are not in evidence in this case, and State Farm has not challenged their exclusion in its petition for review.) Hurricane Ike tore the shingles off the house, and water poured in, along with wet sheetrock and insulation, and in the process of shoveling up the muck from the kitchen floor, some tiles were damaged. Mr. Webb described the damage as "chips." About 25-30 tiles were damaged, some with just very small bits knocked off at the corner, and some chunks as big as a quarter, but none were cracked like after the leak. 3RR18-20, 22-23. While some of the tiles were damaged in the cleanup after Hurricane Ike, that damage was mostly repaired and had nothing to do with foundation movement and the damage was altogether different from the cracks that appeared after the leak.

credited Webb's account of when the cracks appeared. State Farm contends that there is evidence that the cracks were there earlier, so Rabner's testimony must be unreliable. State Farm says on page 12 of its petition, "[a]n expert cannot pick and choose among conflicting pieces of evidence." In fact, that is exactly what experts can do, and it is up to the jury to decide which facts to believe. "When an expert's opinion is predicated on a particular set of facts, those facts need not be undisputed…. An expert's opinion is only unreliable if it is contrary to actual, undisputed facts." *Caffe Ribs, Inc. v. State*, 487 S.W.3d 137, 144 (Tex. 2016).

Furthermore, this supposed "objective data" was not presented to the trial court in State Farm's Motion to Exclude, and generally just consists of opinions offered by State Farm's expert (or State Farm's lawyers) after Rabner had already testified. For instance, State Farm tells this Court that there is something terribly significant about the fact that the tiles were cracked but the grout was not. There was nothing about the supposed significance of untracked grout in State Farm's Motion to Exclude, CR540-552, and State Farm's lawyer did not ask Rabner about it at trial,[2] and the word "grout" does not appear in State Farm's brief in the court of

---

[2] State Farm's lawyer asked Rabner at trial whether he had seen photographs taken by English where "sometimes he would put down something that would indicate you could see a little crack running to the right of the pen and then the other tile to the left of the pen, although the grout's not cracked." 3RR244. Rabner said that he had, and State Farm left it at that, without any follow-up.

9

appeals.

Before a party may present a complaint on appeal, the record must normally show that the complaint was made to the trial court by a timely request, objection, or motion. TEX. R. APP. P. 33.1. Furthermore, the objection has to be sufficiently specific to make the trial court aware of the complaint. TEX. R. APP. P. 33.1(a)(1). When an appellate complaint fails to comport with the trial objection, nothing is preserved for review. *G.T. Mgmt., Inc. v. Gonzalez,* 106 S.W.3d 880, 885 (Tex. App.—Dallas 2003, no pet.). "To preserve complaint on appeal regarding a trial court's ruling on the admissibility of evidence, a party must make a timely objection and obtain a ruling before the testimony is offered and received. The party waives any complaint if an objection is made after admission of the evidence..., or if testimony to the same effect has been previously admitted without objection." *Atlantic Richfield Co. v. Misty Products, Inc.*, 820 S.W.2d 414, 421 (Tex. App.— Houston [14th Dist.] 1991, writ denied). Error is not preserved unless the complaint on appeal matches the objection in the trial court. *In re Y.M.A.*, 111 S.W.3d 790, 791 (Tex. App.—Fort Worth 2003, no pet.). When it filed its motion to exclude Rabner's testimony, it did not claim that there was evidence that the cracks existed prior to the leak. *See* CR540-51. Nor was it mentioned when State Farm actually raised its objection at trial and obtained a ruling on its motion (which was well into Rabner's testimony). 3RR147.

10

State Farm also complains on page 11 of the petition that "[t]he court of appeals ignored Rabner's obvious lack of qualifications." However, since State Farm did not challenge Rabner's qualifications either in the trial court[3] or the in court of appeals, this complaint comes a bit too late. *See* TEX. R. APP. P. 33.1; TEX. R. APP. P. 53.2(f), 55.2; *Horizon Health Corp. v. Acadia Healthcare Co.*, 520 S.W.3d 848, 885 (Tex. 2017) ("matters not raised in an appellant's briefing in the court of appeals are waived").

## II. The court of appeals ruling on attorneys' fees is consistent with this Court's prior rulings and presents no basis for granting review.

Randy Cashiola provided expert testimony on Webb's reasonable and necessary attorneys' fees in accordance with the standards set out by this Court in *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812 (Tex. 1997). In forming his opinions Cashiola went over the file materials and a worksheet that lists the hours that went into the work. 5RR10-11. The worksheet included only work that was "objectively verifiable" and documented, such as depositions, hearings, pleadings, written discovery, conferences documented by e-mails, and some phone calls. 5RR12-13. That worksheet, Plaintiff's Exhibit 32, was admitted expressly with "[n]o objection" by State Farm. 5RR11; *see* PX32. The worksheet stopped at

---

[3] State Farm did not mention qualifications in its pre-trial motion to exclude except in boilerplate in a section headed "Texas Law Governing Admissibility of Expert Opinion," *see* CR540-551, and it made no such objection when Rabner testified at trial, *see* 3RR147.

11

May 5, 2015, and did not include work done for trial. 5RR12. Cashiola testified as to the value of those services based on the time expended at trial and the attorneys' reasonable rates without reference to the worksheet that State Farm now complains of here. 5RR19-23.

In the court of appeals, State Farm asserted that Webb submitted no contemporaneous time records,[4] and instead Webb's attorneys' fee expert, Randy Cashiola, testified based on a "worksheet" setting out the tasks performed, who performed them, the time reasonably expended, and the reasonable hourly rate. State Farm claimed that this was improper, but cited no authority whatsoever. The court of appeals could properly have declined to address the issue at all because it was waived in the trial court due to State Farm's failure to object, and that it was waived again in the court of appeals due to State Farm's failure to adequately brief the issue. *See* TEX. R. APP. P. 33.1(a) (issue must be preserved in the trial court), 38.1(i) (appellant's brief must contain argument "appropriate citations to authorities and to the record); *Ross v. St. Luke's Episcopal Hosp.*, 462 S.W.3d 496, 500 (Tex. 2015)

---

[4] Although State Farm has asserted the records were not contemporaneously kept, that assertion is not supported by the evidence. Cashiola did *not* testify that the time records were not contemporaneously kept: he said that the Mostyn Firm had methods to immediately record time, but he could not say whether it was contemporaneously kept because he was not there to watch it. 5RR70.

("Failure to provide citations or argument and analysis as to an appellate issue may waive it.");

In its petition for review, State Farm for the first time cites some authority, but that authority does not support granting review. In *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 763 (Tex. 2012), the Court said that in fee-shifting situations, "attorneys should document their time much as they would for their own clients" with more or less contemporaneous billing records. But "should" is not "must," and the Court has repeatedly ruled that where such records are not available (like, for instance, where the lawyer works on a contingent fee basis rather than by the hour), attorneys may reconstruct their work to provide the trial court with sufficient information to allow it to perform a meaningful review of the fee application. *Id*. at 764, *Long v. Griffin*, 442 S.W.3d 253, 255-56 (Tex. 2014); *City of Laredo v. Montano*, 414 S.W.3d 731, 736 (Tex. 2013).

The court of appeals' ruling was consistent with this Courts' precedent on the attorneys' fee issue, but even if it were not, it would still not be appropriate to grant review on this issue because the court of appeals remanded for new trial attorneys' fees. The court of appeals reversed the judgment for Webb on his Insurance Code claims and remanded for new trial on the attorneys' fee issue because Cashiola did not segregate out fees attributable only to the claims under the Insurance Code. Opinion at 34. Even if all the work listed on the worksheet could be summarily

13

disregarded, there was still evidence of the value of services provided at trial, so an award of zero attorneys. fees would be improper. "An award of no fees is improper in the absence of evidence affirmatively showing that no attorney's services were needed or that any services provided were of no value." *Russell v. Russell*, 478 S.W.3d 36, 50 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (citing *Midland W. Bldg. L.L.C. v. First Serv. Air Conditioning Contractors, Inc.*, 300 S.W.3d 738, 739 (Tex. 2009)). Even if the Court were to reverse its prior rulings and hold that an attorneys' fee award cannot be based on reconstructed time records, the result would be the same as the result in the court of appeals—a remand for new trial on attorneys' fees. Because a decision by this court would not result in greater relief for State Farm than it obtained in the court of appeals, review is not appropriate.

**III.   There is no reason for the Court to grant review based on State Farm's alternative contention that Webb's attorneys' fees should be limited due to State Farm's settlement offer.**

State Farm asserts that this Court should grant review to determine whether Webb's attorneys' fees should be limited to $5000 under TEX. INS. CODE § 541.159 due its pretrial settlement offer. This is not an appropriate ground for review because the issue was not decided by the court of appeals,[5] and because the issue is one for the trial court to decide.

---

[5] In view of its remand for a new trial on attorneys' fees, the court of appeals said, "we need not address State Farm's other arguments in issue five complaining that Webb's damages should have been limited by State Farm's offer of settlement

14

To invoke the limitations set out in § 541.159, the person against whom the claim is made is to file the settlement offer with the court "accompanied by an affidavit certifying the offer's rejection." TEX. INS. CODE § 541.158(b). Then, if the court finds that the amount of the offer is substantially the same as or greater than the amount of damages found by the trier of fact, damages are limited to the lesser of amount of damages stated in the offer or the amount of damages found by the trier of fact. TEX. INS. CODE § 541.159(a). If the court makes the finding described in subsection (a), it then falls to the trial court to "determine reasonable and necessary fees to compensate the claimant for attorney's fees incurred before the date and time the rejected settlement offer was made." TEX. INS. CODE § 541.159(b). If the court finds that the amount of attorney's fees stated in the offer is the same as, substantially the same as, or more than the amount of reasonable and necessary attorney's fees incurred by the claimant as of the date of the offer, the claimant may not recover any amount of attorney's fees in excess of the amount of fees stated in the offer." *Id*.

This procedure was never invoked. Instead, State Farm demanded a jury question on the amount of attorneys' fees incurred through the date of the offer,

---

and that the trial court erred in accepting an incomplete jury form, as they would not result in greater relief. *See* TEX. R. APP. P. 47.1." Opinion at 36.

15

which the jury answered "N/A" (as Webb's counsel urged, based on State Farm's failure to put on any evidence of fees incurred at any particular date."[6] *See* CR695; 7RR76-77, 79. The damages found by the jury and awarded in the judgment significantly exceed the amount in State Farm's settlement offer, so the district court never had occasion to make the § 541.159(a) finding required even to reach § 541.159(b).

The court of appeals affirmed the judgment for Webb on the breach of contract claim, but reversed on Webb's Insurance Code claims, which left him with an amount of damages that is less than the amount in the settlement offer, and remanded for retrial on attorneys' fees. The court found it unnecessary to address the effect of State Farm's settlement offer on the attorney's fee award because the attorneys' fee award was already going back to the district court for retrial.

The court of appeals' approach was correct, and there is no need for this Court to step in. If the Court denied State Farm's petition for review, one of two things could happen: 1) the Court could grant Webb's petition for review and reinstate the jury's finding on the Insurance Code claim, or 2) not. If the Court does the former, this issue will be moot. If it does the latter, all that will happen is the matter will go

---

[6] State Farm objected that the jury's finding amounted to jury nullification, but the district court opined that it was not nullification so much as a finding that State Farm failed to carry its burden of proof, and overruled the objection. 7RR83-84.

back to the trial court, where State Farm will have the opportunity to properly invoke § 541.159, at which point it will be up to the district court to make the findings required by the statute. There is no reason for this Court to short-circuit the statutory scheme, or to predetermine what sort of evidence the district court can consider in making the § 541.159 findings, or what those findings should be.

### CONCLUSION AND PRAYER

Webb respectfully requests that the Court grant his petition for review and deny State Farm's.

Respectfully submitted,

*/s/ Gregory F. Cox*
Gregory F. Cox
State Bar No. 00793561
THE MOSTYN LAW FIRM
6280 Delaware Street
Beaumont, Texas 77706
(409) 832-2777 (Office)
(409) 832-2703 (Facsimile)

**COUNSEL FOR PETITIONER/CROSS RESPONDENT, DENNIS WEBB**

17

**CERTIFICATE OF COMPLIANCE**

I certify that this document complies with the typeface and word-count requirements set forth in the Rules of Appellate Procedure. This document has been prepared using Microsoft Word, in 14-point Times New Roman. This document contains 4,395 words, as determined by the word count feature of the word processing program used to prepare this document (Microsoft Word), excluding those portions of the petition exempted by Tex. R. App. P. 9.4(i)(1).

/s/ Gregory F. Cox
Gregory F. Cox

**CERTIFICATE OF SERVICE**

I hereby certify that on December 20, 2017, counsel of record listed below was served with a copy of the foregoing document via facsimile. I further certify that on the same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which may send notification of such filing to counsel of record:

J. Hampton Skelton
State Bar No. 18457700
hskelton@skeltonwoody.com
Edward F, Kaye
State Bar No. 24012942
ekaye@skeltonwoody.com
SKELTON & WOODY
248 Addie Roy
Building B, Suite 302
Austin, TX 78746-4100

**Counsel for Respondent/Cross-petitioner**
**State Farm Lloyds**

*/s/ Gregory F. Cox*
Gregory F. Cox